1  LEXINGTON LAW GROUP
   Howard Hirsch, State Bar No. 213209
2  Meredyth Merrow, State Bar No. 328337
   503 Divisadero Street
3  San Francisco, CA 94117
   Telephone: (415) 913-7800
4  Facsimile: (415) 759-4112
   hhirsch@lexlawgroup.com
5  mmerrow@lexlawgroup.com

6  LAW OFFICE OF GIDEON KRACOV
   Gideon Kracov, State Bar No. 179815
7  801 S. Grand Ave., 11th Floor
   Los Angeles, CA 90017
8  Telephone: (213) 629-2071
   Facsimile: (213) 623-7755
9  gk@gideonlaw.net

10 Attorneys for Plaintiff
   ELISA BARGETTO

11

12

13                    **UNITED STATES DISTRICT COURT**

14                   **NORTHERN DISTRICT OF CALIFORNIA**

15

16

17 ELISA BARGETTO, on behalf of herself and all      Case No. _____
   others similarly situated,
18                                                    **CLASS ACTION COMPLAINT**
                        Plaintiffs,
19
           v.
20
   WALGREEN CO.,
21
                        Defendant.
22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff Elisa Bargetto ("Plaintiff"), based on information, belief, and investigation of her counsel, except for information based on knowledge, hereby alleges:

**INTRODUCTION**

1.    The problems associated with plastic pollution are increasing on a local, national, and global scale.  This affects the amount of plastic in the ocean, in freshwater lakes and streams, on land, and in landfills.  Nearly 90% of plastic waste is not recycled, with billions of tons of plastic becoming trash and litter.[1]  According to a recent study, at least 1.2 to 2.5 million tons of plastic trash from the United States were dropped on lands, rivers, lakes and oceans as litter, were illegally dumped, or were shipped abroad and then not properly disposed of.[2]  As consumers become increasingly aware of the problems associated with plastic pollution, they are increasingly susceptible to claims reassuring them that the plastic they purchase is recyclable.  In light of the magnitude of plastic pollution in California and elsewhere, the California voters ratified SB 270 pursuant to Proposition 67, which prohibits stores from selling or distributing a reusable grocery bag made from plastic film unless the bag is "recyclable in this state."  Cal. Pub. Res. Code § 42281(b)(1)(C); *see also id.*, § 42283.  SB 270 also prohibits stores from charging less than ten cents ($0.10) per bag and specifies that all monies collected from customers may only be used for: (1) costs associated with complying with SB 270, (2) the "actual" costs of providing recycled paper bags or reusable grocery bags, and (3) costs associated with "a store's educational materials or educational campaign encouraging the use of reusable grocery bags."  Cal. Pub. Res. Code § 42283(b)(3).

2.    Nevertheless, defendant Walgreen Co. ("Walgreens") sells and distributes reusable plastic grocery bags made from plastic film (the "Products") to California consumers even though the Products are not recyclable in California.  Walgreens' sales and distribution of the Products in

[1] Tom Udall and Alan Lowenthal, *Op-Ed: More than 90% of U.S. plastic waste is never recycled. Here's how we can change that*, L.A. TIMES (Feb. 21, 2020, 3:01 AM) https://www.latimes.com/opinion/story/2020-02-21/plastic-waste-never-recycled-u-s (last accessed Dec. 7, 2020).

[2] Associated Press, *Study: 1 to 2 million tons a year of U.S. plastic trash goes astray*, L.A. TIMES (Oct. 30, 2020, 11:03 AM) https://www.latimes.com/world-nation/story/2020-10-30/study-1-to-2-million-tons-of-us-plastic-trash-goes-astray (last accessed Dec. 7, 2020).

DOCUMENT PREPARED ON RECYCLED PAPER

California are therefore an unlawful business practice. And in light of the large number of Products sold by Walgreens in California, the relatively low costs of complying with SB 270 and of providing bags to customers, and the minimal amount of money Walgreens appears to be spending on promoting the use of reusable grocery bags, Walgreens is likely using the money it has collected from Plaintiff and other California consumers from sales of the Products for purposes beyond those enumerated in SB 270, which is also an unlawful business practice.

3.     There can be no serious question that the Products are not recyclable in California (or anywhere for that matter). In the solid waste industry, it is widely understood that for a product to be considered "recyclable," it must meet at least three criteria. First, consumers must have access to recycling facilities that accept the product to recycle it. Second, recycling facilities must be capable of sorting the product from the general waste stream into the correct material bale. Third, there must be end markets to purchase that material bale to convert the material contained in that bale into a new product. The quality of these material bales also plays a major role in whether that material will be ultimately recycled. The repurposing of material used to make one product into a new product or material fully "closes the loop" of the recycling process (hence the commonly used and widely recognized "chasing arrows" symbol for recycling). Highly contaminated material bales are not wanted by processors due to harms caused to equipment and the production of low-quality materials and products.

4.     Because consumers do not have access to recycling programs that accept the Products, because the Products cannot be separated or recovered from the general waste stream and sorted into the correct materials bale by material recovery facilities ("MRFs"), and because there are no end markets to reuse the Products or to convert the Products into a material that can be reused or used in manufacturing or assembling another item, the Products are not recyclable. Despite Walgreens' claims that the Products are recyclable by "Store Drop-Off," most of the Products typically end up in landfills, incinerators, communities, or the natural environment. Accordingly, Walgreens' sale of the Products is unlawful and its representations that the Products are recyclable are material and false.

5.      Plaintiff purchased the Products because she believed the Products as sold by Walgreens complied with the law.  If Plaintiff had known that the Products were sold unlawfully in California because they are not recyclable, she would not have purchased the Products and would have instead sought reusable bags made from other materials, such as paper or cloth bags. Walgreens thus violated and continues to violate California's Single-Use Carryout Bag Ban ("SB 270"), Cal. Pub. Res. Code §§ 42281(b)(1)(C) and 42283(b)(3); the Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580.5 and 17580(a); the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, *et seq.*; California's False Advertising Law, Cal. Bus. & Prof. Code § 17500; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* based on unlawful, unfair, and deceptive acts and practices; and the express warranty provisions under the California Commercial Code § 2313.

6.      Plaintiff has no adequate remedy at law for the injuries currently being suffered as an award of monetary damages would not prohibit Walgreens' unlawful sale and distribution of the Products in California.  If an injunction is not granted, Plaintiff will suffer irreparable injury because she continues to desire to purchase Products from Walgreens in the future that are legally sold and recyclable but is unable to determine with confidence whether the Products are legally sold and recyclable.  In addition, plastic pollution caused by Walgreens' sale of the Products in California will continue to negatively harm California waters, coasts, communities, and marine life.  California consumers may also contaminate the recycling stream by placing the Products in their recycling bins, thereby hindering the recycling of legitimately recyclable products.  Thus, Plaintiff and the Class seek an order enjoining Walgreens' acts of unlawful, unfair, and deceptive acts and practices in California, which serves the public interest by protecting the environment and the integrity of the recycling stream and by preventing Walgreens from gaining an unfair advantage over companies that lawfully sell their products.  In addition, Plaintiff and the Class seek an award of damages to compensate them for Walgreens' unlawful, unfair, and deceptive acts, and restitution to the individual victims of Walgreens' unlawful, unfair, and deceptive practices.

**PARTIES**

7.      Plaintiff Elisa Bargetto is a resident of San Francisco, California.  Plaintiff is concerned about the environment and seeks out products that are compostable, recyclable or reusable so that she can minimize her impact on the environment in general and on the country's plastic waste problems in particular.  Plaintiff purchased the Products from Walgreens based on a belief that Walgreens' sale of the Products complied with its legal obligations under California law and in reliance on Walgreens' representations that the Products are recyclable.  Plaintiff purchased the Products in December 2021 at a Walgreens retail outlet located in San Francisco. The deceptive representations that the Products are recyclable are located on the front and side of the Products.  Had Plaintiff known that the Products are not recyclable in San Francisco, in California or anywhere else, and therefore Walgreens' sale of the Products were unlawful, she would not have purchased the Products or would not have paid as much as she did for the Products.

8.      Defendant Walgreen Co. is an Illinois corporation with its principal place of business in Deerfield, Illinois.  Walgreens manufactures, distributes, and sells the Products in California.  Walgreens has a significant presence in California, with 586 retail locations, making California its third largest market.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over Walgreens because it is a corporation or other entity that has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market either through the distribution, sale or marketing of the Products in the State of California or by having a facility located in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

11.     **Intradistrict Assignment (L.R. 3-2(c) and (d) and 3.5(b))**:  This action arises in San Francisco County, in that a substantial part of the events which give rise to the claims

asserted herein occurred in San Francisco County. Pursuant to L.R. 3-2(c), all civil actions which arise in San Francisco County shall be assigned to the San Francisco Division or the Oakland Division. Concurrently with filing this Complaint, Plaintiff is filing an affidavit pursuant to Civil Code § 1780(c) regarding the propriety of venue in San Francisco County.

**LEGAL BACKGROUND**

12.    The California Legislature has concluded that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs." Cal. Pub. Res. Code § 42355. In light of this finding, SB 270—which was ratified by California voters as Proposition 67— prohibits stores in California from selling or distributing reusable grocery bags made from plastic film unless the bag is "recyclable in this state." Cal. Pub. Res. Code § 42281(b)(1)(C).[3] SB 270 also prohibits stores from charging less than ten cents ($0.10) per bag and specifies that all monies collected from customers may only be used for: (1) costs associated with complying with SB 270, (2) the "actual" costs of providing recycled paper bags or reusable grocery bags, and (3) costs associated with "a store's educational materials or educational campaign encouraging the use of reusable grocery bags." Cal. Pub. Res. Code § 42283(b)(3).

13.    In addition, EMCA makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Cal. Bus. & Prof. Code § 17580.5. Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for use of Environmental Marketing Claims published by the FTC (the "Green Guides"). *Id.*; *see also* 16 C.F.R. § 260.1, *et seq.*

14.    A product or packaging is only recyclable in California (or elsewhere) if it meets three criteria. First, consumers must have access to recycling facilities that accept the product to

---

[3] The California Public Resources Code also required that plastic bags must be "accepted for return at stores subject to the at-store recycling program [commencing with Section 42250] for recycling." Cal. Pub. Res. Code § 42281(b)(1)(C). Stores such as Walgreens were required to "establish an at store recycling program pursuant to this chapter that provides an opportunity for a customer of the store to return to the store clean plastic carryout bags." *Id.*, § 42251. However, the section requiring retail locations to maintain an at store recycling program expired on January 1, 2020. *Id.*, § 42257.

recycle it.  Second, recycling facilities must be capable of sorting the product from the general waste stream into the correct material bale.  Third, there must be end markets to purchase that material bale to convert the material contained in that bale into a new product.  These three basic prerequisites for recyclability have been codified in several different places in California law.  Under the Public Resource Code, recycling is defined as "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace."  Cal. Pub. Res. Code § 40180.  This definition identifies the three criteria required for an item to be recyclable: (1) collecting; (2) sorting; and (3) returning [reconstituted materials] to the economic mainstream in the form of raw materials for new, reused or constituted products.  Similarly, the Green Guides state "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable.  A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).  This definition also encompasses the three prongs of recyclability: (1) accessibility of recycling programs ("through an established recycling program"); (2) sortation for recovery ("collected, separated, or otherwise recovered from the waste stream"); and (3) end markets ("for reuse or use in manufacturing or assembling another item").

15.     The Sustainable Packaging for The State of California Act of 2018 (the "Sustainable Packaging Act"), Cal. Pub. Res. Code § 42370.2, includes similar recycling standards for food service packaging.  Under the Sustainable Packaging Act, to determine whether a food service packaging is recyclable, CalRecycle must determine whether the food service packaging: (1) is regularly collected, separated, and cleansed for recycling by recycling service providers; (2) is regularly sorted and aggregated into defined streams for recycling processes; (3) is regularly processed and reclaimed or recycled with commercial recycling services; (4) regularly becomes feedstock that is used in the production of new products; and (5) is recycled in sufficient quantity, and is of sufficient quality, to maintain a market value.  Cal.

DOCUMENT PREPARED
ON RECYCLED PAPER

Pub. Res. Code § 42370.2(d)(1)-(6).  On March 4, 2022, CalRecycle published the List of Approved Food Service Packaging, which does not include a single plastic item, such as reusable grocery bags made from plastic film.[4]

16.     The California Public Resources Code further states that product or packaging is only recyclable if "collected for recycling by recycling programs for jurisdictions that collectively encompass at least 60 percent of the population of the state," "sorted into defined streams for recycling processes" by facilities that collectively serve at least 60 percent of the California population, and "with the defined streams sent to and reclaimed at a reclaiming facility." Cal. Pub. Res. Code § 42355.51(d)(2).  This latter statute was added by the recently passed SB 343. While some of that law's restrictions do not take effect until Cal Recycle (California's recycling agency) completes a material characterization study and promulgates associated regulations, SB 343 confirms that, in order to be considered recyclable in California, a product or packaging must actually be recycled in practice for a meaningful portion of the population.  And it is clear from work already performed by California's Statewide Commission on Recycling Markets & Curbside Recycling (the "California Recycling Commission") that the Products do not meet this standard.[5]  In fact, the California Recycling Commission has determined that only three types of plastic are recyclable in California, and plastic film is not one of the three types of plastic identified.[6]

17.     As reflected in the Green Guides' language and regulatory history, the FTC also does not consider a product to be recyclable unless it can actually be recycled.  For instance, the Green Guides provide that: (1) "[i]f any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive;" and (2) "an item that is made from recyclable

---

[4]https://www.calrecycle.ca.gov/sitefinity/status?ReturnUrl=https:%2F%2Fwww.calrecycle.ca.gov%2Fpackaging%2Fstatefoodservice%2Flist.

[5] California's Statewide Commission on Recycling Markets and Curbside Recycling Policy Recommendations ("California Recycling Report"), Submitted June 25, 2021, at p. 94, accessible at https://www.calrecycle.ca.gov/markets/commission (last accessed February 14, 2022).

[6] California's Statewide Commission on Recycling Markets and Curbside Recycling Policy Recommendations ("California Recycling Report"), Submitted June 25, 2021, at p. 94, accessible at https://www.calrecycle.ca.gov/markets/commission (last accessed February 14, 2022).

1    material, but, because of its shape, size, or some other attribute, is not accepted in recycling

2    programs, should not be marketed as recyclable."  16 C.F.R. §§ 260.12(a) and (d); *see also id.*, §

3    260.12(d), Examples 2 and 6.  And in promulgating the current recycling definition that

4    encompasses accessibility, sortability and end markets, the FTC clarified that "[f]or a product to

5    be called recyclable, there must be an established recycling program, municipal or private,

6    through which the product *will be* converted into, or used in, another product or package."  *See* 63

7    Fed. Reg. 84, 24247 (May 1, 1998) (emphasis added).  As the FTC has stated, "while a product

8    may be technically recyclable, if a program is not available allowing consumers to recycle the

9    product, there is no real value to consumers."  *Id*., at 24243

10           18.     The Green Guides also provide specific examples of recycling claims that the FTC

11    considers deceptive, as well as examples of ways in which marketers can qualify those claims.[7]

12    Compliance with the examples provided by the FTC qualifies as a defense to a claim under

13    EMCA.  B&P Code § 17580.5(b).  Under the Green Guides, a marketer may make an unqualified

14    recyclable claim if a substantial majority of consumers or communities have access to recycling

15    facilities for that item.  16 C.F.R. § 260.12(b)(1).  A "substantial majority" means at least 60

16    percent of consumers or communities where the item is sold.  *Id*.  Absent such evidence,

17    marketers are required to use qualifications that vary in strength depending on the degree of

18    consumer access to recycling for an item.  *Id.*, § 260.12(b)(2).  For instance, if recycling facilities

19    are available to slightly less than 60 percent of consumers or communities, the Green Guides

20    recommend that a marketer should qualify the recyclable claim by stating "this product may not

21    be recyclable in your area," or "recycling facilities for this product may not exist in your area."

22    *Id*.  If recycling facilities are available only to a few consumers, the Green Guides recommend

23    that a marketer should qualify its recyclable claim by stating "this product is recyclable only in a

24    few communities that have appropriate recycling facilities."  *Id*.

25

26

27    _____

[7] The examples in the Green Guides are specifically provided by the FTC as its "views on how
28    reasonable consumers likely interpret certain claims."  16 C.F.R. § 260.1(d).

19.    The Green Guides specifically identify qualifications that may be misleading or deceptive to a reasonable consumer.  In fact, the Green Guides warn about plastic film, such as trash bags: "Because trash bags ordinarily are not separated from other trash at the landfill or incinerator for recycling, they are highly unlikely to be used again for any purpose.  Even if the bag is technically capable of being recycled, the claim is deceptive since it asserts an environmental benefit where no meaningful benefit exists."  16 C.F.R. § 260.3(c), Example 2.

20.    The Legislature of the State of California has also declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products."  Cal. Pub. Res. Code § 42355.5.  Under EMCA, "Any person who represents in advertising or on the label or container of a consumer good that the consumer good that it manufactures or distributes is not harmful to, or is beneficial to, the natural environment, through use of such terms as 'environmental choice,' 'ecologically friendly,' 'earth friendly,' 'environmentally friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,' 'ecologically safe,' 'environmentally lite,' 'green product,' or any other like term, or through the use of a chasing arrows symbol or by otherwise directing a consumer to recycle the consumer good, shall maintain in written form in its records…information and documentation supporting the validity of the representation."  Cal. Bus. & Prof. Code § 17580(a).  EMCA specifically requires companies to maintain information and documentation as to whether such products or packaging: (1) conforms with the uniform standards contained in the Green Guides for use of the terms "recycled" or "recyclable"; and (2) meets all the criteria for statewide recyclability pursuant to SB 343.  *Id*., §§ 17580(a)(5) and (a)(6).  In addition, EMCA requires that companies maintain the following records in written form supporting the validity of their recyclable representations: (1) the reasons why a company believes the representation to be true; (2) any significant adverse environmental impacts directly associated with the production, distribution, use, and disposal of the consumer good; (3) any measures that are taken by the company to reduce the environmental impacts directly associated with the production, distribution, and disposal of the consumer good; and (4) violations of any

Document Prepared on Recycled Paper

1    federal, state, or local permits directly associated with the production or distribution of the

2    consumer good. *Id.*, § 17580(a)(1)-(4).  The California Legislature declared its intent that the

3    information and documentation supporting the validity of any environmental marketing claims

4    shall be fully disclosed to the public, and information and documentation maintained pursuant to

5    Cal. Bus. & Prof. Code § 17580 must be furnished to any member of the public upon request. *Id.*,

6    § 17580(b), (d).

7        21.    The Green Guides also require marketers to ensure that their claims are supported

8    by a reasonable basis prior to making the claim.  16 C.F.R. § 260.2.  A reasonable basis is defined

9    as competent and reliable scientific evidence, such as "tests, analyses, research, or studies that

10   have been conducted and evaluated in an objective manner by qualified persons and are generally

11   accepted in the profession to yield accurate and reliable results." *Id.*  "Such evidence should be

12   sufficient in quality and quantity based on standards generally accepted in the relevant scientific

13   fields, when considered in light of the entire body of relevant and reliable scientific evidence, to

14   substantiate that each of the marketing claims is true." *Id.*

15                                     **BACKGROUND FACTS**

16       22.    In the past decade humans across the globe have produced 8.3 billion metric tons

17   of plastic, most of it in disposable products and packaging that ends up as trash or pollution.[8]  Of

18   the 8.3 billion metric tons produced, 6.3 billion metric tons have become plastic waste and only

19   9% of that has been recycled.[9]  A third of the single-use plastic generated ends up in the natural

20   environment, accounting for 100 million metric tons of plastic pollution in 2016.[10]  Current

21

22

23

24   [8] Roland Geyer, et al., *Production, use, and fate of all plastics ever made*, SCIENCE ADVANCES, Jul. 19, 2017, https://plasticoceans.org/wp-

25   content/uploads/2018/05/Production_use_and_fate_of_all_plastics_ever_made.pdf (last accessed Dec. 7, 2020).

26   [9] *Id.*

27   [10] *No Plastic in Nature: Accessing Plastic Ingestion From Nature to People*, WWF, June 2019, https://d2ouvy59p0dg6k.cloudfront.net/downloads/plastic_ingestion_web_spreads.pdf at p. 6 (last

28   accessed Dec. 7, 2020).

DOCUMENT PREPARED
ON RECYCLED PAPER

estimates suggest that there are over 150 million tons of plastics in the ocean.[11]  The Environmental Protection Agency estimates that Americans alone disposed of 35.7 million tons of plastic in 2018, 91.3% of which was not recycled.[12]

23.     While California had a goal to achieve a 75% recycling rate by 2020, California's recycling rate is actually in decline.  According to CalRecycle, in 2014 California's recycling rate was 50%, dropping to 47% in 2015 and down to 44% in 2016.[13]  And according to the California Recycling Commission, the state's recycling rate dropped to 37% in 2019.[14]

24.     Plastic shopping bag pollution in particular is receiving widespread international attention as illustrated on the cover of the June 2018 edition of National Geographic headlined "Planet or Plastic?"[15]  Americans throw away an estimated 100 billion plastic bags a year, and the average bag takes up to 1,000 years to break down.[16]  In 2018 in the United States, 4.2 million tons of post-consumer plastic bag, sack, and wrap waste were generated, but only 0.42 million tons were recycled.[17]

25.     Recent investigations into the proliferation of plastic pollution plaguing the natural environment have revealed that the plastics industry has known for decades that most products and packaging made from plastic would not be recycled.  On September 11, 2020, National

---

[11] *The New Plastics Economy Rethinking the Future of Plastics*, ELLEN MACARTHUR FOUNDATION AND MCKINSEY & COMPANY (2016), https://plasticoceans.org/wp-content/uploads/2018/05/EllenMacArthurFoundation_TheNewPlasticsEconomy_Pages.pdf at p. 17 (last accessed Dec. 7, 2020).

[12] EPA, *2018 Advancing Sustainable Materials Management: Facts and Figures Report* – Tables and Figures. (https://www.epa.gov/sites/production/files/2021-01/documents/2018_tables_and_figures_dec_2020_fnl_508.pdf (last accessed Feb. 14, 2021).

[13] *California's Statewide Recycling Rate,* CALRECYCLE, last updated Mar. 3, 2020, https://www.calrecycle.ca.gov/75percent/recyclerate (last accessed Dec. 7, 2020).

[14] California Statewide Commission on Recycling Markets and Curbside Recycling Policy Recommendations, CALRECYCLE, https://drive.google.com/drive/folders/17URSu4dubsoX4qV0qH3KciSWZhV595o5 (last accessed Feb. 14, 2021).

[15] https://www.nationalgeographic.com/environment/planetorplastic/.

[16] https://www.biologicaldiversity.org/programs/population_and_sustainability/sustainability/plastic_bag_facts.html

[17] J. Meert, et al., Impact of Plastic Bag Bans on Retail Return Polyethylene Film Recycling Contamination Rates and Speciation, Waste Management 135 (2021) 234-242.

DOCUMENT PREPARED ON RECYCLED PAPER

Public Radio ("NPR") published an investigation illustrating the plastic industry's decades-long awareness that recycling would not keep plastic products or packaging out of landfills, incinerators, communities, or the natural environment.[18]  In a 1974 speech, one industry insider stated "there is serious doubt that [recycling plastic] can ever be made viable on an economic basis."[19]  Larry Thomas, former president of the Society of the Plastic Industry (known today as the Plastics Industry Association), told NPR that "if the public thinks that recycling is working, then they are not going to be as concerned about the environment."[20]  The NPR investigative report details the length and expense that the plastics industry went to deceive consumers that plastic was easily recyclable, despite knowledge that the cost of recycling would never be economical.  Similarly, a recent Canadian Broadcasting Corporation news report describes that even the recycling logo was used as a marketing tool to improve the image of plastics after environmental backlash in the 1980s.[21]  "There was never an enthusiastic belief that recycling was ultimately going to work in a significant way," yet the plastics industry spent millions on ads to deceive the public as to the efficacy of recycling.[22]

26.    Consumers have recently become even more concerned about the problems associated with single-use plastics polluting the oceans and the natural environment.  The staggering amount of plastic pollution accumulating in the environment is accompanied by an array of negative side effects.  For example, plastic debris is frequently ingested by marine animals and other wildlife, which can be injurious, poisonous, and deadly.[23]  Floating plastic is

---

[18] Lara Sullivan, *How Big Oil Misled The Public Into Believing Plastic Would be Recycled*. NPR.ORG (Sep. 11, 2020, 5:00 AM), https://www.npr.org/2020/09/11/897692090/how-big-oil-misled-the-public-into-believing-plastic-would-be-recycled (last accessed Dec. 7, 2020).

[19] *Id.*

[20] *Id.*

[21] *Recycling was a lie – a big lie – to sell more plastic, industry experts say*, CBC.CA, Sep. 23, 2020, https://www.cbc.ca/documentaries/the-passionate-eye/recycling-was-a-lie-a-big-lie-to-sell-more-plastic-industry-experts-say-1.5735618 (last accessed Dec. 7, 2020).

[22] *Id.*

[23] Amy Lusher, et al., *Microplastics in Fisheries and Aquaculture: Status of knowledge on their occurrence and implications for aquatic organisms and food safety*, FAO Fisheries and Aquaculture Technical Paper No. 615, Rome, Italy, 2017 http://www.fao.org/3/a-i7677e.pdf (last accessed Dec. 7, 2020).

also a vector for invasive species,[24] and plastic that gets buried in landfills can leach harmful chemicals into ground water that is absorbed by humans and other animals.[25]  Plastic litter on the streets and in and around our parks and beaches also degrades the quality of life for residents and visitors.  Scientists have also discovered that plastic releases large amounts of methane, a powerful greenhouse gas, as it degrades.[26]  Thus, plastic pollution contributes to global climate change, which affects California in the form of extreme drought, sea level rise, and more frequent and severe wildfires.[27]

27.     Due to the availability of cheap raw materials to make "virgin plastic," there is essentially no market demand for most types of recycled plastic.  Virgin plastic is derived from oil and natural gas and has a higher quality than recycled plastic.  Recognizing the market potential from plastic production, major oil and natural gas companies have greatly expanded their petrochemical operations to increase production of plastic resins and products, which drives down the price of virgin plastic.[28]  As a result, using virgin plastic to produce plastic products or packaging is cheaper than using recycled plastic.  Recycling facilities no longer have an incentive to collect, sort, clean and reprocess plastic waste because there are almost no buyers of the resulting plastic, pellets, or other scrap materials.

---

[24] *Report on Marine Debris as a Potential Pathway for Invasive Species*, NOAA, March 2017, Silver Spring, MD; https://marinedebris.noaa.gov/sites/default/files/publications-files/2017_Invasive_Species_Topic_Paper.pdf (last accessed Dec. 7, 2020).

[25] Emma L. Teuten, et *al., Transport and release of chemicals from plastics to the environment and to wildlife*, PHILIOS TRANS R. SOC. LOND. B. BIOL. SCI, July. 27, 2009, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2873017/ (last accessed Dec. 7, 2020).

[26] Sarah-Jeanne Royer, et al., *Production of methane and ethylene from plastic in the environment*, Aug. 1, 2018, PLoS ONE 13(8) e0200574, https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0200574 (last accessed Dec. 7, 2020).

[27] *What Climate Change Means for California*, U.S. EPA, Aug. 2016, EPA 430-F-16-007, https://19january2017snapshot.epa.gov/sites/production/files/2016-09/documents/climate-change-ca.pdf (last accessed Dec. 7, 2020).

[28] *Fueling Plastics: Fossils, Plastics, & Petrochemical Feedstocks*. CIEL.ORG (Sep. 2017) https://www.ciel.org/wp-content/uploads/2017/09/Fueling-Plastics-Fossils-Plastics-Petrochemical-Feedstocks.pdf (last accessed Dec. 7, 2020).

DOCUMENT PREPARED
ON RECYCLED PAPER

28.    Historically, recycling facilities in the United States shipped plastic scrap to China and other countries in the Far East for recycling. But millions of pounds of that exported plastic waste was never recycled.[29] Instead, this plastic was burned or dumped into waterways, where it was carried into the ocean.[30] For years, tons of plastic that U.S. consumers dutifully sorted and transported to recycling facilities ultimately ended up in the ocean or the natural environment. For example, in 2015 China's Yangtze River ranked highest for plastic entering the oceans.[31] That year, 333,000 tons of plastic were deposited into the ocean from the Yangtze River, more than double the amount for the river with the next highest amount.[32]

29.    In February 2013, based on the high amounts of low-value and contaminated plastics shipped there, China enacted Operation Green Fence, an aggressive inspection effort aimed at curtailing the amount of contaminated "recyclables" and waste that was being sent to China.[33] China began inspecting 70 percent of imported containers filled with "recyclables" and started cracking down on shippers and recyclers for shipping low-value and contaminated plastic waste.[34] Despite manufacturers' and recyclers' awareness of China's refusal to accept low-value and contaminated plastic, the U.S. continued to export most of its plastic waste to China. By 2016, the U.S. was exporting almost 700,000 tons a year of plastic waste to China.[35]

---

[29] Kara Lavender Law, et al. *The United States' contribution of plastic waste to land and ocean*, SCI. ADV., Oct. 30, 2020, Vol. 6, no. 44.   https://advances.sciencemag.org/content/6/44/eabd0288 (last accessed Feb 24, 2021).

[30] Christopher Joyce, *Where Will Your Plastic Trash Go Now that China Doesn't Want it?*, NPR.ORG (Mar. 13, 2019, 4:28 PM ET), https://www.npr.org/sections/goatsandsoda/2019/03/13/702501726/where-will-your-plastic-trash-go-now-that-china-doesnt-want-it (last accessed Dec. 7, 2020); *see also Discarded: Communities on the Frontlines of the Global Plastic Crisis,* GAIA, Apr. 2019, https://wastetradestories.org/wp-content/uploads/2019/04/Discarded-Report-April-22.pdf (last accessed Dec. 7, 2020).

[31] Laurent C.M. Lebreton, et al., *River plastic emissions to the world's oceans*, NAT. COMMUN. Jun. 7, 2017, 8:15611, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5467230/ (last accessed Dec. 7, 2020).

[32] *Id.*

[33] *What Operation Green Fence Has Meant for Recycling*, WASTE 360, https://www.waste360.com/business/what-operation-green-fence-has-meant-recycling (last accessed Dec. 7, 2020).

[34] *Id.*

[35] Christopher Joyce, *supra* note 27.

DOCUMENT PREPARED ON RECYCLED PAPER

-14-

30.     In February 2017, in response to the continued shipment of low-value and contaminated plastic waste, China announced its National Sword policy, which banned the importation of certain solid waste and set strict contamination limits on recyclable material. Because of the National Sword policy, to the extent they ever existed at all, end markets for plastic film such as the Products have essentially vanished.[36]  One year after China's National Sword Policy, China's plastics imports plummeted by 99 percent.[37]  Following enactment of the National Sword Policy other countries in the Far East followed suit by banning imports of low-value and contaminated plastics that had long been polluting their environments.[38]  In May 2019, 187 countries decided to significantly restrict international trade in plastic scrap and waste to help address the improper disposal of plastic pollution, through the Basel Convention Plastic Waste Amendments.[39]  The Basel Convention prohibits export of mixed plastic waste to countries who are not members of the Organization for Economic Co-operation and Development.[40]  Due to increased regulations and restrictions on importing plastic waste, recycling companies can no

---

[36] Liz Zarka, *Recycling's Sword of Damocles*, EAST BAY EXPRESS, Mar. 21, 2019, https://m.eastbayexpress.com/oakland/recyclings-sword-of-damocles/Content?oid=26354842 (last accessed Dec. 7, 2020); *see also* Cheryl Katz., *Piling Up: How China's Ban on Importing Waste Has Stalled Global Recycling*, YALE ENVIRONMENT 360, Mar. 7, 2019, https://e360.yale.edu/features/piling-up-how-chinas-ban-on-importing-waste-has-stalled-global-recycling (last accessed Dec. 7, 2020).

[37] Cheryl Katz, *supra* note 40.

[38] *Why Some Countries Are Shipping Back Plastic Waste*, BBC News, https://www.bbc.com/news/world-48444874 (last accessed February 9, 2021); *see also International Policies Affecting Global Commodity Markets*, Cal Recycle, https://www.calrecycle.ca.gov/markets/nationalsword/globalpolicies (last accessed February 9, 2021).

[39] *New International Requirements For The Export And Import of Plastic Recyclables And Waste*, U.S. EPA,  last updated February 17, 2021, https://www.epa.gov/hwgenerators/new-international-requirements-export-and-import-plastic-recyclables-and-waste#:~:text=the%20Basel%20Convention.-,What%20are%20the%20Basel%20plastic%20scrap%20and%20waste%20amendments%3F,most%20plastic%20scrap%20and%20waste.&text=Prior%20notice%20and%20consent%20is%20required%20for%20Basel%20Y48,hazardous%20plastic%20scrap%20and%20waste (last accessed February24, 2021).

[40] *Basel Convention on the Control of Transboundary Movements of Hazardous Wastes and Their Disposal*, open for signature Mar. 23, 1989, adopted May 5, 1992, U.N.T.S. vol. 1673, Amendments to Annexes II, VII and IX, *Plastic Waste Amendments*, effective Jan. 1, 2021, http://www.basel.int/Implementation/Plasticwaste/PlasticWasteAmendments/Overview/tabid/8426/Default.aspx (last accessed Feb. 24, 2021).

DOCUMENT PREPARED ON RECYCLED PAPER

1  longer sell many types of used plastic at prices that cover their transportation and processing

2  costs, providing them with no incentive to do so.

3      31.    Walgreens continues to sell the Products as recyclable in California and elsewhere

4  in the United States.  Walgreens has done so despite widespread acknowledgment that end

5  markets for plastic waste, and in particular plastic film, have been shrinking and that the majority

6  of plastic film labeled as recyclable in California and other regions in the United States ends up in

7  landfills, incinerators, communities, and the natural environment.

8      32.    Below is an example of a Product sold by Walgreens in California:

9



25      33.    Under SB 270, the Products may not be sold unless they are "recyclable in this

26  state." Cal. Pub. Res. Code § 42281(b)(1)(C); *see also id.*, § 42283.  Here, because the Products

27  do not meet the three criteria for recyclability (i.e., access, sortation, and end markets) the

28  Products may not be sold in California.

34.    According to their labeling, the Products are comprised of high-density polyethylene film (#2 plastic).  As the California Recycling Commission recently concluded, only three plastic item types are recyclable in California: Plastic #1 PET Bottles without shrink sleeves or other non-recyclable components, Plastic #2 HDPE bottles (natural) without shrink sleeves or other non-recyclable components, and Plastic #2 HDPE bottles (color) without shrink sleeves or non-recyclable components.[41]  The California Recycling Commission therefore determined that the Products are not recyclable in California for curbside recycling.

35.    Under EMCA and Green Guides, an unqualified recyclable representation may be made only when a substantial majority of consumers have access to recycling facilities that are recycling a product through curbside recycling.  *Id.*, § 260.12(b)(1).  When recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims.  *Id.*, § 260.12(b)(2).  The Products' labels make several unqualified recycling representations, including: (1) a triangular chasing arrows symbol with the number "2" in the center; (2) "Reduce, Reuse, Recycle" (with each word prefaced by a bullet point); and (3) "Thank you for reusing and recycling this bag."  Here, few, if any, consumers have access to recycling facilities that accept the Products for curbside recycling; to the extent any facilities accept the Products for curbside recycling, the Products cannot be sorted into the correct material bale; and even the few Products that may be collected and sorted are not reused or used in manufacturing or assembling another item.  Due to high contamination rates, MRFs consider plastic film to be a contaminant and either landfill plastic film or send it to energy recovery facilities.[42]  Most MRFs do not want plastic film in recycling streams because of operations challenges, and, as a result, only 11% of United States residents can include films in curbside bins.[43]  Plastic film that is recovered from MRFs have approximately only 16% of the

---

[41] California's Statewide Commission on Recycling Markets and Curbside Recycling Policy Recommendations ("California Recycling Report"), Submitted June 25, 2021, at p. 94, accessible at https://www.calrecycle.ca.gov/markets/commission (last accessed February 14, 2022).

[42] J. Meert, supra note 17.

[43] Id.

DOCUMENT PREPARED
ON RECYCLED PAPER

value of retail plastic film because of contamination.[44]  Because the Products are not recyclable

through curbside recycling, Walgreens' unqualified recycling representations are unlawful, false,

and misleading.

36.     Notably, the labels of the Products themselves include the phrase "Store Drop-

Off" inside a chasing arrows symbol, thereby implicitly acknowledging that curbside recycling is

not an option.  However, there are several problems with reliance on the "Store Drop-Off"

language.  First, most consumers will not see past the multiple unqualified recycling

representations on the Products and will simply place the Products in their blue bins for curbside

recycling collection.  Indeed, the California Recycling Commission has determined that: (1)

flexible plastic bags are a top source of contamination in curbside recycling bins; and (2) more

than half of Californians think plastic bags are accepted in their curbside recycling program,

regardless of whether that is true.[45]  Second, very few drop-off bins are offered by Walgreens to

California consumers, and very few are available generally.  In the past, California required

supermarkets of a certain size to maintain a plastic carryout bag collection bin, but that rule

expired on January 1, 2020.  *See* Cal. Pub. Res. Code § 42257.  Consequently, many retail stores

in California, including Walgreens' stores, no longer accept plastic bags for drop-off recycling.

Therefore, even those few consumers who understand that they need to return the Products to a

store for recycling, and who then make the effort to do so, will be hard-pressed to find a

collection bin.  According to PlasticFilmRecycling.org, which is supported by the Plastic

Division of the American Chemistry Council, there are only two locations in all of San Francisco,

California that have a store drop-off bin, neither of which is a Walgreens.[46]  Third, it is unclear

whether the few Products that may be returned to in-store collection bins are actually recycled,

particularly since plastic bags collected in a store bin are likely to be contaminated (both when

dropped off in the bin, and from other materials deposited in the bin) and are unlikely to meet the

---

[44] Id.

[45] California Recycling Report, pp. 105-9.

[46] https://bagandfilmrecycling.org/ (last visited April 28, 2022).

DOCUMENT PREPARED
ON RECYCLED PAPER

quality specifications of those few plastic film recyclers that exist. There is very little capacity to recycle plastic film in California or anywhere else, and contaminated plastic film is not a desirable material for any processor.[47] The limited opportunity for a consumer to return a Product to a store for potential recycling by a plastic film processor does not make the Product "recyclable in this state" as required by SB 270. Nor does the "Store Drop-Off" language make the recyclable claims on the Products any less deceptive, misleading, or unlawful.

37.    Indeed, the California Recycling Commission recently determined that the use of the chasing arrows symbol, any variation of the word "recyclable," or "Store Drop-Off" recycling representations on plastic bags and films runs afoul of California labeling laws. The California Recycling Commission found:

> Flexible plastic bags and film are a major source of contamination in curbside recycling bins. The flexible plastic materials are harming curbside recycling systems by clogging machinery in material recovery facilities (MRFs) and fiber processors. There is not a comprehensive store takeback system for plastic bags or film in California. In MRFs, the plastic bags and film contaminate paper and cardboard bales and lower the quality and material value of the paper bales. Flexible plastic bags and films that depict the word 'recycle' or the chasing arrows recycling symbol cause consumer confusion and contribute to contamination.

38.    The California Recycling Commission requested that California's existing laws be enforced by requiring retailers and product manufacturers to remove the word "recycle," "recyclable," and/or the recycling symbol from plastic bags and plastic films. It further stated that the recyclable labels used on many plastic bags and films in California are not legal and contribute to consumer confusion and contamination. In addition, the California Recycling Commission specifically identified the "Store Drop-Off" statement as problematic because there

---

[47] The California Recycling Commission found that, based on a survey of plastic film processors in California and Nevada, there is only capacity to recycle about 3% of the plastic film that is generated as waste in California. California Recycling Report, p. 106.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    is not a comprehensive takeback system in California.  The California Recycling Commission

2    stated, "California law (Cal. Bus. & Prof. Code § 17580 and Cal. Pub. Res. Code § 42355.5) and

3    the Green Guides (16 C.F.R. § 260.2) require substantiation for recycling claims such as this,"

4    and "it is our opinion that this claim is not provable.  This text should be eliminated from [plastic

5    bags]."  The California Recycling Commission enumerated 80 examples of plastic bags or film

6    that illegally contained a recycling representation, and specifically identified the Products as one

7    of those examples.[48]

8         39.    An industry-sponsored labeling organization, How2Recycle, recently stated that

9    the ability of the Store Drop-Off stream to alleviate the packaging industry's end-of-life

10   challenges with flexible packaging is limited.[49]  How2Recycle is an organization created by

11   industry to promote a standardized labeling system for packaging that its members may pay a fee

12   to use.  How2Recyle stated:

13        Like all recycling streams, market volatility in the global commodities context is a

14        challenge.  But for Store Drop-off in particular, the demand for the material, its current

15        recycling rates, and the challenges inherent in Store Drop-off collection (consumer

16        convenience, reliance on retailer participation), along with the enormous volumes of

17        flexible packaging that are being produced, suggest that its long-term potential for all or

18        most flexible packaging is insufficient to meet recovery needs.  Accordingly,

19        How2Recycle recommends that brands, packaging producers and resin manufacturers

20        critically analyze what wide-reaching collection, sortation, reprocessing and market

21        mechanisms and investments are required to scale recyclability of flexible packaging for

22        the far future.

23

24

25

26   [48] *See* California Recycling Commission Letter to CalRecycle, Dec. 3, 2021 (available at:
     https://drive.google.com/drive/folders/1ARQy3JTiWPsjqDQ0f76SWD5qbOTEoqX9).  The
27   Products are identified in the accompanying Appendix on page 75.

28   [49] https://how2recycle.info/news/2020/report-the-future-of-store-drop-off-recyclability.

40.     A 2017 report on Film Recycling Investment found that only 7% of retail bags that are available for recycling are returned by residents for recycling.[50]  That report further found that of the approximately 300 million pounds of plastic film that reprocessing facilities receive a year, only 10 million pounds (approximately 3%) are able to be marketed due to the poor quality of plastic film and the lack of recycling markets for such low-value plastic.  Due to the lack of recycling markets for plastic film, 93% of California MRFs do not even accept it, and the reprocessing facilities that do accept it do not have the capacity to recycle large quantities of plastic film.[51]  Based on these data, even if more consumers returned plastic bag film for drop-off recycling, MRFs do not have the capacity to sort and recycle it.  Thus, the representation that these Products are recyclable if dropped off fails to communicate the limited availability of both drop-off sites and programs that can actually recycle the Products.  Ultimately, the Products are not accepted by most MRFs nor can they be collected, sorted, or separated from the general waste stream.  And there is no end market to recycle such Products in California.

41.     A major problem caused by selling the Products as recyclable is contamination of legitimate recycling streams.  For instance, according to the Recycling Partnership, "plastic bags cause MRF operators to shut down the recycling line many times a day to cut off bags that have wrapped around equipment.  This maintenance shut down reduces throughput for a facility, raises cost of labor to sort materials and maintain equipment, increases waste coming out of the MRF, and puts workers at risk of injury when they are performing maintenance."[52]

42.     To the extent a store makes reusable grocery bags available for sale, SB 270 also prohibits stores from charging less than ten cents ($0.10) per bag and specifies that all monies collected from customers may only be used for: (1) costs associated with complying with SB 270, (2) the "actual" costs of providing recycled paper bags or reusable grocery bags, and (3) costs

---

[50] *Film Recycling Investment Report*, prepared by RSE USA, THE CLOSED LOOP FOUNDATION (2017), at p. 19.

[51] *Id.*

[52] Asami Tanimoto, *West Coast Contamination Initiative Research Report*, THE RECYCLING PARTNERSHIP, Apr. 2020, https://recyclingpartnership.org/wp-content/uploads/2020/04/The-Recycling-Partnership_WCCI-Report_April-2020_Final.pdf at p. 13 (last accessed Dec. 7, 2020).

DOCUMENT PREPARED
ON RECYCLED PAPER

associated with "a store's educational materials or educational campaign encouraging the use of reusable grocery bags." Cal. Pub. Res. Code § 42283(b)(3). In light of the large number of Products sold by Walgreens in California, the relatively low costs of complying with SB 270 and of providing bags to customers, and the minimal amount of money Walgreens appears to be spending on promoting the use of reusable grocery bags, Walgreens is likely using the money it has collected from Plaintiff and other California consumers from sales of the Products for purposes beyond those enumerated in SB 270.

43.    On February 18, 2022, pursuant to California law, Plaintiff requested that Walgreens substantiate the recycling claims on the Products and provide the other information required by Cal. Bus. & Prof. Code § 17580(a). Walgreens is required to provide its substantiation to any member of the public upon request. Cal. Bus. & Prof. Code § 17580(b). Walgreens has not provided any documentation substantiating its representations.

44.    By labeling the Products as recyclable, Walgreens is violating California law and making environmental marketing claims that are false, misleading, and deceptive. Because the Products are not recyclable, Walgreens may not sell them in California. Moreover, by representing that the Products are recyclable, ordinary consumers are likely to be deceived by such representations. Consumers purchase the Products from Walgreens based on the belief that Walgreens has a legal right to sell the Products and that the Products are recyclable. These consumers have no way of knowing whether the Products are actually segregated from the general waste stream, cleaned of contamination, or reused or converted into a material that can be reused or used in manufacturing or assembling another item. These consumers place a high priority on environmental concerns in general, and on the negative consequences regarding the proliferation of plastic pollution in particular. Based on the labeling and sale of Walgreens' Products, reasonable consumers believe that the Products are legal and recyclable. Walgreens' representations that the Products are recyclable are thus material to reasonable consumers.

1

## **CLASS ACTION ALLEGATIONS**

2        45.    Plaintiff brings this suit individually and as a class action pursuant to Federal Rule

3 of Civil Procedure Rule 23, on behalf of herself and the following Class of similarly situated

4 individuals:

5                All persons who purchased the Products for personal, family or

6                household purposes in California (either directly or through an

7                agent) during the applicable statute of limitations period (the

8                "Class").  Specifically excluded from the Class are Walgreens; the

9                officers, directors or employees of Walgreens; any entity in which

10              Walgreens has a controlling interest; and any affiliate, legal

11              representative, heir or assign of Walgreens.  Also excluded are any

12              judicial officer presiding over this action and the members of

13              his/her immediate family and judicial staff, and any juror assigned

14              to this action.

15        46.    Plaintiff is unable to state the precise number of potential members of the proposed

16 Class because that information is in the possession of Walgreens.  However, the number of Class

17 members is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1).  The

18 exact size of the proposed Class and the identity of its members will be readily ascertainable from

19 the business records of Walgreens and as well as Class members' own records and evidence.  The

20 disposition of the claims of the members of the Class in this class action will substantially benefit

21 both the parties and the Court.

22        47.    There is a community of interest among the members of the proposed Class in that

23 there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2),

24 including whether Walgreens sale of the Products are unlawful and whether Walgreens' labels

25 include uniform misrepresentations that misled Plaintiff and the other members of the Class to

26 believe the Products are recyclable when they are not.  Proof of a common set of facts will

27 establish the liability of Walgreens and the right of each member of the Class to relief.

28

48.    Plaintiff asserts claims that are typical of the claims of the entire Class for purposes of Rule 23(a)(3).  Plaintiff and all members of the Class have been subjected to the same wrongful conduct because they have purchased the Products that are unlawfully sold in California and that are labeled as recyclable, when they are not.

49.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to those of other members of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in complex litigation of this nature to represent her. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

50.    Class certification is appropriate under Rule 23(b)(2) because Walgreens has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief, is appropriate respecting the Class as a whole.

51.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class.  These common legal and factual questions, which do not vary among Class members and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to the following:

    a.   whether Walgreens sells the Products in California;

    b.   whether the Products are recyclable in California;

    c.   whether Walgreens' sale of the Products in California is unlawful;

    d.   whether Walgreens is illegally retaining the funds it collects from California consumers who purchase the Products instead of using those funds for the purposes enumerated in SB 270;

    e.   whether Walgreens has substantiation that the Products are recyclable;

    f.   whether Walgreens' labeling claims regarding the recyclability of the Products are likely to deceive a reasonable consumer;

    g.   whether Walgreens knows the Products cannot be recycled;

    h.   whether Walgreens' "Store Drop-Off" qualification complies with California

DOCUMENT PREPARED
ON RECYCLED PAPER

law;

i.   whether Walgreens' representations regarding the recyclability of the Products are likely to be read and understood by a reasonable consumer;

j.   whether Walgreens' representations regarding the recyclability of the Products are in compliance with the Green Guides;

k.   whether Walgreens' claims regarding the recyclability of the Products would be material to a reasonable consumer of the Products;

l.   whether Walgreens' conduct in labeling of the Products constitutes a violation of California consumer protection laws;

m.   whether Walgreens' representations concerning the Products constitute express warranties with regard to the Products;

n.   whether Walgreens breached the express warranties it made with regard to the Products;

o.   whether Walgreens' representations regarding recycling constitute representations that the Products have characteristics, benefits or qualities which they do not have;

p.   whether Walgreens has been unjustly enriched from the sale of the Products;

q.   whether punitive damages are warranted for Walgreens' conduct and, if so, an appropriate amount of such damages; and

r.   whether Plaintiff and the Class members are entitled to injunctive, equitable and monetary relief.

52.   Walgreens sells the Products at all of its California locations, even though the Products may not be sold in California.  In addition, Walgreens utilizes labeling that includes uniform misrepresentations that misled Plaintiff and the other members of the Class.  Walgreens claims regarding the recyclability of the Products are one of the most prominent features of Walgreens' labeling of the Products.  Nonetheless, the Products are not in fact recyclable.  Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

-25-

53.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Class members have suffered and will suffer irreparable harm and damages as a result of Walgreens' wrongful conduct.  Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Walgreens for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims are concerned.  Absent a representative class action, members of the Class would continue to suffer losses for which they would have no remedy, and Walgreens would unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other members of the Class who are not parties to the adjudications or may substantially impede their ability to protect their interests

## **FIRST CAUSE OF ACTION**

**(Plaintiff, on Behalf of Herself And The Class, Alleges Violations of California Cal. Bus. & Prof. Code § 17200, *et seq*.
Based on Commission of Unlawful Acts)**

54.     Plaintiff incorporates by reference the allegations set forth above.

55.     The violation of any law constitutes an unlawful business practice under Cal. Bus. & Prof. Code § 17200.

56.     Walgreens' conduct violates California's SB 270, Cal. Pub. Res. Code § 42281(b)(1)(C).  SB 270 prohibits stores from selling or distributing a reusable grocery bag made from plastic film unless the bag is "recyclable in this state."  Cal. Pub. Res. Code § 42281(b)(1)(C); *see also id.*, § 42283.  The Products are not recyclable in California or anywhere else.  By selling the Products in California even though the Products are not recyclable in California, Walgreens is violating Cal. Pub. Res. Code § 42281(b)(1)(C).

DOCUMENT PREPARED
ON RECYCLED PAPER

57.      In addition, SB 270 prohibits stores from charging less than ten cents ($0.10) per bag and specifies that all monies collected from customers may only be used for: (1) costs associated with complying with SB 270, (2) the "actual" costs of providing recycled paper bags or reusable grocery bags, and (3) costs associated with "a store's educational materials or educational campaign encouraging the use of reusable grocery bags."  Cal. Pub. Res. Code § 42283(b)(3).  Walgreens is likely using the money it has collected from Plaintiff and other California consumers from sales of the Products for purposes beyond those enumerated in SB 270.  Accordingly, Walgreens is violating Cal. Pub. Res. Code § 42283(b)(3).

58.      Walgreens' conduct also violates California Cal. Bus. & Prof. Code § 17500, which prohibits knowingly making, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or to induce the public to purchase a product.  By misrepresenting that the Products are recyclable, Walgreens is violating Cal. Bus. & Prof. Code § 17500.

59.      Walgreens' conduct also violates EMCA, Cal. Bus. & Prof. Code § 17580.5, which makes it unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim.  Pursuant to § 17580.5, the term "environmental marketing claim" includes any claim contained in the Green Guides.  16 C.F.R. § 260.1, *et seq.*  Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable.  A product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).  By misrepresenting that the Products are recyclable as described above, Walgreens is violating Cal. Bus. & Prof. Code § 17580.5.

60.      Walgreens conduct further violates EMCA, Cal. Bus. & Prof. Code § 17580(a), which makes it unlawful for any person to make any unsubstantiated environmental marketing claim.  Pursuant to Cal. Bus. & Prof. Code § 17580(a), "Any person who represents in advertising or on the label or container of a consumer good that the consumer good that it manufactures or distributes is not harmful to, or is beneficial to, the natural environment, through use of such

1  terms as 'environmental choice,' 'ecologically friendly,' 'earth friendly,' 'environmentally

2  friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,' 'ecologically

3  safe,' 'environmentally lite,' 'green product,' or any other like term, or through the use of a

4  chasing arrows symbol or by otherwise directing a consumer to recycle the consumer good, shall

5  maintain in written form in its records…information and documentation supporting the validity of

6  the representation." Cal. Bus. & Prof. Code § 17580(a). EMCA specifically requires companies

7  to maintain information and documentation as to whether such products or packaging: (1)

8  conforms with the uniform standards contained in the Green Guides for use of the terms

9  "recycled" or "recyclable"; and (2) meets all the criteria for statewide recyclability pursuant to SB

10  343. *Id*., §§ 17580(a)(5) and (a)(6). In addition, EMCA requires that companies maintain the

11  following records in written form supporting the validity of their recyclable representations: (1)

12  the reasons why a company believes the representation to be true; (2) any significant adverse

13  environmental impacts directly associated with the production, distribution, use, and disposal of

14  the consumer good; (3) any measures that are taken by the company to reduce the environmental

15  impacts directly associated with the production, distribution, and disposal of the consumer good;

16  and (4) violations of any federal, state, or local permits directly associated with the production or

17  distribution of the consumer good. *Id*., § 17580(a)(1)-(4). The California Legislature declared its

18  intent that the information and documentation supporting the validity of any environmental

19  marketing claims shall be fully disclosed to the public, and information and documentation

20  maintained pursuant to Cal. Bus. & Prof. Code § 17580 must be furnished to any member of the

21  public upon request. *Id*., § 17580(b), (d).

22      61.    The Green Guides also require marketers to ensure that their claims are supported

23  by a reasonable basis prior to making the claim. 16 C.F.R. § 260.2. A reasonable basis is defined

24  as competent and reliable scientific evidence, such as "tests, analyses, research, or studies that

25  have been conducted and evaluated in an objective manner by qualified persons and are generally

26  accepted in the profession to yield accurate and reliable results." *Id*. "Such evidence should be

27  sufficient in quality and quantity based on standards generally accepted in the relevant scientific

28

fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true." *Id.*

62.    On February 18, 2022, pursuant to California law, Plaintiff requested that Walgreens substantiate the recycling claims on the Products and provide the other information required by Cal. Bus. & Prof. Code § 17580(a).  Walgreens is required to provide its substantiation to any member of the public upon request.  Cal. Bus. & Prof. Code § 17580(b).  Walgreens has not provided any documentation substantiating its representations.  By failing to substantiate the validity of its recycling representations with respect to the Products, Walgreens is violating Cal. Bus. & Prof. Code § 17580(a) and the Green Guides.

63.    Walgreens' conduct also violates Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or effecting commerce.  By misrepresenting that the Products are recyclable, Walgreens is violating Section 5 of the FTC Act.

64.    Walgreens' conduct is also a breach of warranty.  Walgreens' representations that the Products are recyclable constitute affirmations of fact made with regard to the Products, as well as descriptions of the Products, that are part of the basis of the bargain between Walgreens and purchasers of the Products.  Because those representations are material, false and misleading, Walgreens has breached its express warranty as to the Products and has violated California Commercial Code § 2313.

65.    As detailed more fully elsewhere herein, Walgreens' acts and practices were intended to and did result in the sale of the Products in violation of the CLRA, California Civil Code §1750, *et seq*., and specifically California Civil Code §§ 1770(a)(5), § 1770(a)(7) and § 1770(a)(9).

66.    By violating the laws enumerated above, Walgreens has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

67.    Plaintiff has no adequate remedy at law for the injuries currently being suffered as an award of monetary damages would not prohibit Walgreens' unlawful sale and distribution of

the Products in California.  If an injunction is not granted, Plaintiff will suffer irreparable injury because she continues to desire to purchase Products from Walgreens in the future that are legally sold and recyclable but is unable to determine with confidence whether the Products are legally sold and recyclable.  In addition, plastic pollution caused by Walgreens' sale of the Products in California will continue to negatively harm California waters, coasts, communities, and marine life.  California consumers may also contaminate the recycling stream by placing the Products in their recycling bins, thereby hindering the recycling of legitimately recyclable products.  Thus, Plaintiff and the Class seek an order enjoining Walgreens' acts of unlawful, unfair, and deceptive acts and practices in California, which serves the public interest by protecting the environment and the integrity of the recycling stream and by preventing Walgreens from gaining an unfair advantage over companies that lawfully sell their products as recyclable.  In addition, Plaintiff and the Class seek restitution to the individual victims of Walgreens' unlawful, unfair, and deceptive practices.

68.    Plaintiff purchased the Products because she believed the Products as sold by Walgreens complied with the law.  If Plaintiff had known that the Products were illegal in California because they are not recyclable in California, she would not have purchased the Products and would have instead sought reusable bags made from other materials, such as paper or cloth bags.  Plaintiff purchased the Products from Walgreens based on a belief that Walgreens' sale of the Products complied with its legal obligations under California law and in reliance on Walgreens' representations that the Products are recyclable.  Walgreens' claims that the Products are recyclable are material, untrue, and misleading.  These recyclable claims are uniform and prominent on the Products.

69.    An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code § 17203.

Wherefore, Plaintiff prays for judgment against Walgreens, as set forth hereafter.

DOCUMENT PREPARED ON RECYCLED PAPER

1

**SECOND CAUSE OF ACTION**

2

**(Plaintiff, on Behalf of Herself And The Class, Alleges Violations of California Cal. Bus. & Prof. Code § 17200,**

3

*et seq.* **Based on Fraudulent Acts and Practices)**

4

70.     Plaintiff incorporates by reference the allegations set forth above.

5

6

71.     Under Cal. Bus. & Prof. Code § 17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

7

8

72.     Walgreens has engaged and continues to engage in conduct that is likely to deceive

9

members of the public.  This conduct includes, but is not limited to, representing that the Products are recyclable in California, when they are not.

10

73.     Plaintiff has no adequate remedy at law for the injuries currently being suffered as

11

an award of monetary damages would not prohibit Walgreens' unlawful sale and distribution of

12

the Products in California.  If an injunction is not granted, Plaintiff will suffer irreparable injury

13

because she continues to desire to purchase Products from Walgreens in the future that are legally

14

sold and recyclable but is unable to determine with confidence whether the Products are legally

15

sold and recyclable.  In addition, plastic pollution caused by Walgreens' sale of the Products in

16

California will continue to negatively harm California waters, coasts, communities, and marine

17

life.  California consumers may also contaminate the recycling stream by placing the Products in

18

their recycling bins, thereby hindering the recycling of legitimately recyclable products.  Thus,

19

Plaintiff and the Class seek an order enjoining Walgreens' acts of unlawful, unfair, and deceptive

20

acts and practices in California, which serves the public interest by protecting the environment

21

and the integrity of the recycling stream and by preventing Walgreens from gaining an unfair

22

advantage over companies that lawfully sell their products as recyclable.  In addition, Plaintiff

23

and the Class seek restitution to the individual victims of Walgreens' unlawful, unfair, and

24

deceptive practices.

25

74.     Plaintiff purchased the Products because she believed the Products as sold by

26

Walgreens complied with the law.  If Plaintiff had known that the Products were illegal in

27

California because they are not recyclable in California, she would not have purchased the

28

Products and would have instead sought reusable bags made from other materials, such as paper or cloth bags.  Plaintiff purchased the Products from Walgreens based on a belief that Walgreens' sale of the Products complied with its legal obligations under California law and in reliance on Walgreens' representations that the Products are recyclable.  Walgreens' claims that the Products are recyclable are material, untrue, and misleading.  These recyclable claims are uniform and prominent on the Products.

75.     By committing the acts alleged above, Walgreens has engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

76.     An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code § 17203.

Wherefore, Plaintiff prays for judgment against Walgreens, as set forth hereafter.

## THIRD CAUSE OF ACTION

**(Plaintiff, on Behalf of Herself And The Class, Alleges Violations of California Cal. Bus. & Prof. Code § 17200, *et seq*.**
**Based on Unfair Acts and Practices)**

77.     Plaintiff incorporates by reference the allegations set forth above.

78.     Under California Cal. Bus. & Prof. Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous, or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

79.     Walgreens has engaged and continues to engage in conduct which is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  This conduct includes, but is not limited to, unlawfully selling the Products, representing that the Products are recyclable in California when they are not, and failing to substantiate the environmental benefits of the Products.  By illegally selling the Products, and by taking advantage of consumers concerned about the environmental impacts of plastic pollution, Walgreens' conduct far outweighs the utility, if any, of such conduct.

DOCUMENT PREPARED
ON RECYCLED PAPER

80.     Walgreens has engaged and continues to engage in conduct that violates the legislatively declared policy of Cal. Pub. Res. Code § 42355.5.  Under the California Public Resources Code, the Legislature of the State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products."  Cal. Pub. Res. Code § 42355.5.  The Code further states that "the Legislature further finds and declares that it is the public policy of the state that claims related to the recyclability of a product or packaging be truthful in practice and accurate.  Consumers deserve accurate and useful information related to how to properly handle the end of life of a product or packaging."  *Id*., 42355.5(b).  These policies are based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs."  *Id*., § 42355.  It is unfair for Walgreens to represent that the Products are recyclable without substantiation, in direct violation of the California Legislature's declared public policy.

81.     Walgreens' conduct also violates the policy of EMCA and the Green Guides.  The Green Guides mandate that "[a] product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12(a).  It further states that "[a]n item that is made from recyclable material, but because of its shape, size or some other attribute is not accepted in recycling programs, should not be marketed as recyclable."  16 C.F.R. § 260.12(d).  EMCA states that "it is unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied.  For the purpose of this section, environmental marketing claims shall include any claims contained in the Guides for the use of Environmental Marketing Claims published by the Federal Trade Commission."  Cal. Bus. & Prof. Code § 17580.5.  As explained above, the Products cannot be recycled, and it is therefore unfair for Walgreens to make a recyclable claim.

Taking advantage of consumer perception of recycling violates the policy of the Green Guides and EMCA.

82. Walgreens' conduct also violates the policy of substantiation policy of EMCA. Under EMCA, "Any person who represents in advertising or on the label or container of a consumer good that the consumer good that it manufactures or distributes is not harmful to, or is beneficial to, the natural environment, through use of such terms as 'environmental choice,' 'ecologically friendly,' 'earth friendly,' 'environmentally friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,' 'ecologically safe,' 'environmentally lite,' 'green product,' or any other like term, or through the use of a chasing arrows symbol or by otherwise directing a consumer to recycle the consumer good, shall maintain in written form in its records…information and documentation supporting the validity of the representation." Cal. Bus. & Prof. Code § 17580(a). The California Legislature declared its intent that the information and documentation supporting the validity of any environmental marketing claims shall be fully disclosed to the public, and information and documentation maintained pursuant to Cal. Bus. & Prof. Code § 17580 must be furnished to any member of the public upon request. *Id*., § 17580(b), (d). Plaintiff requested substantiation on February 18, 2022, which Walgreens has not provided. It is unfair for Walgreens to withhold information it is mandated to disclose pursuant to statute.

83. Walgreens' conduct also violates the substantiation policy of the Green Guides. The Green Guides require marketers to ensure that their claims are supported by a reasonable basis prior to making the claim. 16 C.F.R. § 260.2. A reasonable basis is defined as competent and reliable scientific evidence, such as "tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results." *Id*. "Such evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true." *Id*. It is unfair for Walgreens to represent that the Products are recyclable without a reasonable basis.

DOCUMENT PREPARED
ON RECYCLED PAPER

84.    It is also unfair for Walgreens to represent that the Products are recyclable via store drop-off, without actually requiring its retail stores to maintain a store drop-off bin.

85.    By committing the acts alleged above, Walgreens has engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Cal. Bus. & Prof. Code § 17200.

86.    Plaintiff has no adequate remedy at law for the injuries currently being suffered as an award of monetary damages would not prohibit Walgreens' unlawful sale and distribution of the Products in California.  If an injunction is not granted, Plaintiff will suffer irreparable injury because she continues to desire to purchase Products from Walgreens in the future that are legally sold and recyclable but is unable to determine with confidence whether the Products are legally sold and recyclable.  In addition, plastic pollution caused by Walgreens' sale of the Products in California will continue to negatively harm California waters, coasts, communities, and marine life.  California consumers may also contaminate the recycling stream by placing the Products in their recycling bins, thereby hindering the recycling of legitimately recyclable products.  Thus, Plaintiff and the Class seek an order enjoining Walgreens' acts of unlawful, unfair, and deceptive acts and practices in California, which serves the public interest by protecting the environment and the integrity of the recycling stream and by preventing Walgreens from gaining an unfair advantage over companies that lawfully sell their products as recyclable.  In addition, Plaintiff and the Class seek restitution to the individual victims of Walgreens' unlawful, unfair, and deceptive practices.

87.    Plaintiff purchased the Products because she believed the Products as sold by Walgreens complied with the law.  If Plaintiff had known that the Products were illegal in California because they are not recyclable in California, she would not have purchased the Products and would have instead sought reusable bags made from other materials, such as paper or cloth bags.  Plaintiff purchased the Products from Walgreens based on a belief that Walgreens' sale of the Products complied with its legal obligations under California law and in reliance on Walgreens' representations that the Products are recyclable.  Walgreens' claims that the Products

DOCUMENT PREPARED
ON RECYCLED PAPER

are recyclable are material, untrue, and misleading.  These recyclable claims are uniform and prominent on the Products.

88.     An action for injunctive relief and restitution is specifically authorized under California Cal. Bus. & Prof. Code § 17203.

Wherefore, Plaintiff prays for judgment against Walgreens, as set forth hereafter.

## FOURTH CAUSE OF ACTION

**(Plaintiff, on Behalf of Herself and the Class, Alleges Violations of the California Consumers Legal Remedies Act – Injunctive Relief and Damages)**

89.     Plaintiff incorporates by reference the allegations set forth above.

90.     Plaintiff and the Class members purchased the Products for personal, family or household purposes.

91.     The acts and practices of Walgreens as described above were intended to deceive Plaintiff and the Class members as described herein and have resulted and will result in damages to Plaintiff and the Class members.  These actions violated and continue to violate the CLRA in at least the following respects:

a.     In violation of Section 1770(a)(5) of the CLRA, Walgreens' acts and practices constitute representations that the Products have characteristics, uses or benefits which they do not; and

b.     In violation of Section 1770(a)(7) of the CLRA, Walgreens' acts and practices constitute representations that the Products are of a particular quality, which they are not.

c.     In violation of Section 1770(a)(9) of the CLRA, Walgreens' acts and practices constitute the advertisement of the Products without the intent to sell them as advertised.

92.     By reason of the foregoing, Plaintiff and the Class members have suffered damages.

93.     By committing the acts alleged above, Walgreens violated the CLRA.

Document Prepared on Recycled Paper

94.    In compliance with the provisions of California Civil Code § 1782, on February 18, 2022, Plaintiff provided written notice to Walgreens of her intention to seek damages under California Civil Code § 1750, *et seq.*, and requested that Walgreens offer an appropriate consideration or other remedy to all affected consumers.  As of the date of this complaint, Walgreens has not done so.  Accordingly, Plaintiff seeks damages pursuant to California Civil Code §§ 1780(a)(1) and 1781(a).

95.    Pursuant to California Civil Code § 1780(a)(2) Plaintiff and the Class members are entitled to an order enjoining the above-described wrongful acts and practices of Walgreens, providing actual and punitive damages and restitution to Plaintiff and the Class members, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

Wherefore, Plaintiff prays for judgment against Walgreens, as set forth hereafter.

## FIFTH CAUSE OF ACTION

**(Plaintiff, on Behalf of Herself and the Class, Alleges Breach of Express Warranty)**

96.    Plaintiff incorporates by reference the allegations set forth above.

97.    The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

98.    As detailed above, Walgreens sold the Products as recyclable.  Walgreens' representations that the Products are recyclable constitute affirmations of fact made with regard to the Products as well as descriptions of the Products.

99.    Walgreens' representations regarding the recyclability of the Products are uniformly made on the Products and are thus part of the basis of the bargain between Walgreens and purchasers of the Products.

100.    California has codified and adopted the provisions of the Uniform Commercial Code governing express warranties (Cal. Com. Code § 2313).

101.    At the time that Walgreens designed, manufactured, sold and distributed the Products, Walgreens knew that the Products were not recyclable.

102.    As set forth in the paragraphs above, the Products are not recyclable and thus do not conform to Walgreens' express representations to the contrary.  Walgreens has thus breached its express warranties concerning the Products.

103.    On February 18, 2022, Plaintiff sent a pre-suit demand letter to Walgreens notifying Walgreens that the Products are not recyclable.  Walgreens therefore has actual and constructive knowledge that the Products are not recyclable and were thus not sold as labeled.

104.    As a direct and proximate result of Walgreens' breach of express warranties, Plaintiff and Class members have suffered damages.

Wherefore, Plaintiff prays for judgment against Walgreens, as set forth hereafter.

## SIXTH CAUSE OF ACTION

**(Plaintiff, on Behalf of Herself and the Class, Alleges Quasi-Contract (Unjust Enrichment))**

105.    Plaintiff incorporates by reference the allegations set forth above.

106.    Plaintiff and the Class members conferred benefits on Walgreens by purchasing the Products.

107.    Walgreens has knowledge of such benefits.

108.    Walgreens voluntarily accepted and retained the benefits conferred.

109.    Walgreens has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class members' purchases of the Products.

110.    Retention of that money under these circumstances is unjust and inequitable because Walgreens' sale of the Products were unlawful and Walgreens' misleadingly represented through its labeling that the Products are recyclable, when the Products are not in fact recyclable.

111.    These misrepresentations caused injuries to Plaintiff and the Class members because they would not have purchased the Products, or would not have paid as much for the Products, had they known that the sale of the Products are unlawful and that the Products are not recyclable.

112.    Because Walgreens' retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, Walgreens ought to pay restitution to Plaintiff and the Class members for its unjust enrichment.

113.    As a direct and proximate result of Walgreens' unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

Wherefore, Plaintiff prays for judgment against Walgreens, as set forth hereafter

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff has no adequate remedy at law and prays for judgment and relief against Walgreens as follows:

A.    That the Court preliminarily and permanently enjoin Walgreens from conducting its business through the unlawful, unfair, or fraudulent business acts or practices, and other violations of law described in this Complaint;

B.    That the Court order Walgreens to conduct a corrective advertising and information campaign advising consumers that the Products do not have the characteristics, uses, benefits, and qualities Walgreens has claimed;

C.    That the Court order Walgreens to cease and refrain from selling the Products in California unless they are recyclable;

D.    That the Court order Walgreens to comply with its obligations to substantiate that the Products are recyclable;

E.    That the Court order Walgreens to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F.    That the Court order Walgreens to notify each and every Class member of the pendency of the claims in this action in order to give such individuals an opportunity to obtain restitution and damages from Walgreens;

G.    That the Court order Walgreens to pay restitution to restore all Class members all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising, plus pre- and post-judgment interest thereon;

H.    That the Court order Walgreens to account for and to disgorge all money wrongfully obtained and all revenues and profits derived by Walgreens as a result of its acts or

DOCUMENT PREPARED
ON RECYCLED PAPER

1    practices as alleged in this Complaint;

2         I.     That the Court award damages to Plaintiff and the Class to compensate them for

3    the conduct alleged in this Complaint;

4         J.     That the Court award punitive damages pursuant to California Civil Code

5    § 1780(a)(4);

6         K.     That the Court grant Plaintiff her reasonable attorneys' fees and costs of suit

7    pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(d), the

8    common fund doctrine, or any other appropriate legal theory; and

9         L.     That the Court grant such other and further relief as may be just and proper.

10   **<u>JURY DEMAND</u>**

11   Plaintiff demands a trial by jury on all causes of action so triable.

12

13   Dated:   April 29, 2022                       Respectfully submitted,

14                                                LEXINGTON LAW GROUP

15

16                                              */s/ Howard Hirsch*

17                                            Howard Hirsch (State Bar No. 213209)

18                                            Meredyth Merrow (State Baw No. 328337)
                                              LEXINGTON LAW GROUP

19                                            503 Divisadero Street
                                              San Francisco, CA 94117

20                                            Telephone: (415) 913-7800
                                              Facsimile: (415) 759-4112

21                                            hhirsch@lexlawgroup.com

22                                            rbergoff@lexlawgroup.com
                                              mmerrow@lexlawgroup.com

23                                            Attorneys for Plaintiff

24                                            Elisa Bargetto

25

26

27

28