NELSON MULLINS RILEY & SCARBOROUGH, LLP
Cory E. Manning (State Bar No. 213120)
cory.manning@nelsonmullins.com
Jarrett O. Coco (admitted *Pro Hac Vice*)
jarrett.coco@nelsonmullins.com
1320 Main St., 17th Floor
Columbia, SC 29201
Telephone: 803.255.5524
Facsimile: 803.256.7500

Miles E. Coleman (admitted *Pro Hac Vice*)
miles.coleman@nelsonmullins.com
2 W. Washington St., 4th Floor
Greenville, SC 29601
Telephone:  864.373.2352
Facsimile: 864.373.2925

Attorneys for Defendant Walgreen Co.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISA BARGETTO, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WALGREEN CO.,<br><br>Defendant. | Case No. 3:22-cv-02639-TLT<br><br>**REPLY IN SUPPORT OF DEFENDANT WALGREEN CO.'s MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>Date:   Tuesday, August 20, 2024<br>Time:   2:00 PM PT<br>Dept.:  Courtroom 9<br>            19th Floor<br>Judge:  Hon. Trina L. Thompson<br><br>Complaint filed:  April 29, 2022 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

I.    INTRODUCTION .......................................................................................................1

II.   ARGUMENT..............................................................................................................1

        a.    Credit Card Statements ..................................................................2

        b.    Transaction Data ............................................................................4

        c.    Plaintiff Failed Even to Search For Receipts ................................6

        d.    Mr. Roodman is Irrelevant ............................................................8

        e     Plaintiff Failed to Properly Respond to Walgreens' Discovery Requests.................9

        f.    Sanctions Are Appropriate...........................................................10

        g.    Evidence of Attorneys' Fees .......................................................11

III.  CONCLUSION .........................................................................................................12

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4
*Edgerly v. City & Cnty. of San Francisco*
    No. C 03-02169 WHA, 2005 WL 235710, at *3 (N.D. Cal. Feb. 1, 2005) ........................... 12

5

6
*Hensley-Maclean v. Safeway, Inc.*
    No. 11-CV-01230-RS, 2015 WL 3956099, (N.D. Cal. June 29, 2015) ................................ 10

7

8
*Lanovaz v. Twinings N. Am., Inc.*
    No. C-12-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24, 2014) ................................. 8

9
*Lilly v. Jamba Juice Company*
    308 F.R.D. 231 (N.D. Cal.2014) .............................................................................................. 7

10

11
*Matter of Yagman*
    796 F.2d, 1165, 1184 (9th Cir. 1986) ..................................................................................... 12

12

13
*Ries v. Arizona Beverages USA LLC*
    287 F.R.D. 523 (N.D. Cal. 2012) .............................................................................................. 8

14
*Salkil v. Mount Sterling Township Police Dept.*
    458 F.3d 520 (6th Cir. 2006) ................................................................................................... 11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.     INTRODUCTION

2          The facts are simple.  Plaintiff's counsel filed this lawsuit without any documentary proof

3   that Plaintiff purchased a bag from Walgreens.  When confronted with direct evidence that

4   Plaintiff had not purchased a bag, Plaintiff's counsel nevertheless filed her Motion for Class

5   Certification ("Motion"), representing to this Court that she had purchased the bags, while

6   simultaneously searching for another putative plaintiff who did, in fact, purchase a bag.  In other

7   words, Plaintiff's counsel (1) filed a class action lawsuit in federal court without confirming that

8   their client had standing, (2) filed and argued their Motion despite possessing overwhelming

9   evidence that their client lacked standing, and (3) simultaneously searched for a replacement

10  plaintiff who actually did have standing, all while maintaining the façade of their client's alleged

11  standing.  Walgreens was forced to defend itself against a frivolous putative class action that never

12  should have been filed, and it should be compensated for these costs.

13         Plaintiff's Opposition to Walgreens' Motion for Sanctions ("Opposition") attempts to

14  obfuscate and misdirect by making excuses and shifting blame to Walgreens, but Plaintiff cannot

15  escape these simple facts. Walgreens did not seek sanctions lightly.  Counsel for Walgreens gave

16  Plaintiff's counsel multiple off ramps, urging them to look at the evidence and consider the

17  ramifications of pushing forward.  But they persisted anyway.  Accordingly, Walgreens should be

18  awarded its reasonable fees for its defense of this litigation, or alternatively, and at minimum, its

19  fees for opposing the Motion and bringing this one.

## II.    ARGUMENT

20

21         Plaintiff claims to have bought a bag from Walgreens in two separate transactions in

22  December 2021.  Two months after she allegedly bought these bags, on February 28, 2022,

23  Plaintiff sent her demand letter to Walgreens.  (ECF No. 96-4.)  This suggests that sometime in the

24  roughly two months between December 24, 2021 (the date of the second transaction) and February

25  28, 2022 (the date of her demand letter), Plaintiff learned for the first time of the supposed non-

26  recyclability of the bags she allegedly bought, decided to litigate, located counsel, and presented

27  them with facts sufficient to support a viable claim, all of which happened fast enough that her

28  counsel still had time to research and analyze causes of action and draft and send a demand letter,

on February 28, 2022. Instead, it appears it was Plaintiff's counsel who hatched the idea of bringing this class action, needed a Plaintiff, found one (Ms. Bargetto) through someone they knew,[1] and then filed this lawsuit without first checking simple and obvious sources to be sure they had the right plaintiff.

In her Opposition, Plaintiff asks this Court to believe that she could not possibly have known *a mere two months later* whether she bought a bag or what credit card she may have used, and that it would have been completely unreasonable for her to check her credit card statements, her MyWalgreens account, or her email for copies of the receipts. She's wrong on all these points. The places that she and her counsel would have looked as part of a reasonable and competent inquiry—and what they would have found if they *had* looked—are explained below.

### a. Credit Card Statements

Plaintiff claims that "[p]rior to Walgreens providing [transaction] information, Plaintiff was unable to locate the correct credit card statements for the card she used to make the Walgreens purchases at issue." Declaration of Patrick Carey, (ECF 103-1 at 2.) This is difficult to believe. The December statements for her credit cards could and should have been checked and the appropriate statements produced. She knew that she visited Walgreens twice in December 2021, and she knew the locations of the stores—all information contained in her credit card statements. It was a simple matter of reviewing her credit card statements from December 2021 and producing the ones that reflect the purchases, whether that be three, twenty, or fifty different credit card statements. Those credit card statements should have been timely collected, reviewed, and produced in discovery and Plaintiff's failure to do so is one of the critical failures that leads us here. Plaintiff's claim that she could not possibly identify her own credit card statements without transaction data from Walgreens does not withstand scrutiny.

Plaintiff's hypothetical excuse that she "believed she no longer had the credit card or access to the data associated with that credit card," ECF No 103-1 at 2, is equally unpersuasive.

---

[1] *See* Plaintiff's Deposition, ECF No. 86-1 at 166:14 – 169:21 (stating that her attorneys also represented Plaintiff's employer at the time and that a work colleague "mentioned something about the recyclability of plastic bags and how LLG [Lexington Law Group] was offering to represent plaintiffs," that LLG "[p]otentially" already had an idea for a lawsuit in mind, and that Plaintiff had no plans of filing a lawsuit prior to that).

First, the obvious: "believing" something does not relieve a party from actually confirming it, which clearly did not happen here. Second, and no less obvious: Plaintiff made the purchases in December 2021, and then sent the demand letter two months later. The absolute latest that Plaintiff's duty to preserve triggered was when she reasonably anticipated litigating which would have been *before* she sent her demand letter to Walgreens. It is simply not possible that Plaintiff would have any reasonable basis to believe she "no longer had the credit card or access to the data" at that point. The payment due date for her second credit card statement was February 20, 2022 (*see* ECF No 86-6 at 8 (BARG01199)), which was only *eight days* before she sent her demand letter. Clearly, Plaintiff would have had access to a statement that was due eight days before she threatened suit demanding millions of dollars from Walgreens.

The fact is, Plaintiff failed to collect and produce those credit card statements until over two years later, after she filed her Motion for Class Certification, and only at Walgreens' repeated demands. (*See* March 15, 2024 email from Coco to Carey, ECF No 86-7 at 2 (Plaintiff's counsel agreeing to "look into" the credit card statements and Defense counsel responding that Plaintiff "knew that she used a credit card to make her purchases and should have referenced and produced that statement[, a]nd if she didn't remember, she was certainly on inquiry notice based on the discovery [Walgreens] propounded for that statement and any other documentary proof (e.g., receipts)")). Thus, the world in which Plaintiff's hypothetical excuse is valid could only be one in which she spoliated evidence. It is unclear which scenario is worse for Plaintiff, but they certainly are both bad and neither excuse Plaintiff's failure to produce timely the credit card statements.

It's obvious that the credit card statements are relevant, but a casual observer may wonder how timely production of the credit card statements would have changed anything in this case. As discussed below, Plaintiff provided only vague descriptions of her transactions—only the month, store addresses, ambiguous descriptions of the products purchased, and zero documentary evidence of her transactions. If Plaintiff had timely produced the credit card statements (again, we know now that Plaintiff had not even "looked into" them before filing her case, let alone before filing her Motion for Class Certification), it would have given Walgreens the credit card number, the date, and the dollar amounts of the transactions. Walgreens would have used the credit card

number to search its transaction data and locate the transactions in question and learned that Plaintiff did not purchase a bag.  (*See*, *e.g*., Declaration of Ramirez, ECF No. 86-3 at ¶10 (stating that Walgreens searched its transaction data using credit card numbers once it had Plaintiff's credit card numbers).)

Plaintiff's timely production of this information—and the documentary proof it led to, showing that she lacked standing—would have spared Walgreens nearly a year of arduous and expensive discovery;[2] it would have spared at least some of the *nineteen* third parties whom Plaintiff subpoenaed the time and expense of responding, searching for, reviewing, and producing documents; it would have spared the Court the time and effort of resolving motions practice and carrying the case on its docket; and it would have spared Plaintiff and her counsel the time and expense of prosecuting a case that should never have been brought.

b.  Transaction Data

Plaintiff claims without support that Walgreens should have been able to find the transactions based on the scant and vague information they provided in discovery: "The idea that Walgreens, a sophisticated multi-billion-dollar corporation, could not use its own database to identify this [transaction] information without Plaintiff's phone number or email address strains credulity."  (Plaintiff's Opposition, ECF No. 103 at 8.)  Yet Plaintiff offers no information and cites no discovery response that Walgreens could have used to identify the transactions.[3]  The fact is, Walgreens had only the month, the addresses of two stores, and vague descriptions of products purchased to go on.  (*See* Plaintiff's Responses to Walgreen's First Set of Interrogatories at Interrogatory 6, attached hereto as Exhibit A ("In December 2021, Plaintiff purchased *various small items* and a grocery bag made of plastic film from Defendant. The location of Defendant's

---

[2] Plaintiff's "difficulty" in finding "the correct credit card statements" does not garner any sympathy with Walgreens, whose discovery burden in this matter has been significant, and, it turns out, all for naught.

[3] Plaintiffs incorrectly suggests, again with no support or context, that the following statement from Mr. Ramirez's declaration could maybe mean that only cashiers in store are unable search by customer name, but that Walgreens' corporate office maybe could: "MyWalgreens accounts are not associated with, and cannot be searched by, customer's name." (Declaration of Gil Ramirez, ECF No. 86-3.)  Nowhere in Mr. Ramirez's declaration does he cabin any statement, including this one, to "cashiers in store."  Plaintiff is attempting to insert ambiguity where there is none.

store is 210 Mount Hermon Road, Scotts Valley, California 95066. . . . In December of 2021, Plaintiff purchased *a picture frame* and a grocery bag made of plastic film from Defendant. The location of Defendant's store is 199 Parnassus Avenue, San Francisco, California 94117.") (emphasis added).)  Plaintiff offers no realistic way for Walgreens to have identified the transactions.  Perhaps Plaintiff expects that Walgreens should have looked at a month's worth of transaction data from two stores to see if they could find something that could be described as "various small items" and "a picture frame."  It is Plaintiff's argument, not Walgreens's, that strains credulity.

Plaintiff asserts that the transaction data is inaccurate because it doesn't match Plaintiff's purported recollection of the transactions, yet it matches exactly with Plaintiff's own credit card statements.   One the one hand, Plaintiff argues that she cannot be expected to have "some crystal-clear recollection—over two years after the fact" (Opposition, ECF No. 103 at 4), but on the other assures the Court that Walgreens transaction database must be incorrect because she and Mr. Roodman recall otherwise.  Plaintiff further complains that Walgreens produced "incomplete and cherry-picked transaction data" (Plaintiff's Opposition, ECF No. 103 at 13), but, predictably, does not state what other transaction data would have been relevant or helpful.  Walgreens produced all the transaction data associated with the transactions in Plaintiff's allegations before she filed her Motion.  It later produced any and all transaction data associated with Plaintiff's MyWalgreens account as well as transaction data showing that other customers were charged for bags on the same day at the same store.  It's not clear what other data Plaintiff would have wanted or needed, how Walgreens's production was "incomplete and cherry-picked," or, frankly, how Plaintiff would have been entitled to anything more under Rule 26.  The fact that Plaintiff didn't ask a single question about or issue discovery into the transaction data until May 16, 2024—more than 10 weeks after Walgreens produced the data and 9 weeks after Plaintiff filing her Motion—speaks volumes and demonstrates this as another baseless and hypothetical excuse.[4]

---

[4] Plaintiff states that Walgreens "never provided Plaintiff with discovery responses" to their May 16, 2024 discovery requests, apparently to insinuate that Walgreens simply ignored them. However, Walgreens didn't respond to these requests because their responses were not due until after the case was dismissed.  Walgreens is not required to respond to defunct discovery requests in dismissed cases.

In what is perhaps her most astonishing argument, Plaintiff claims, again without support, that Walgreens willfully "chose to withhold the [transaction data] from Plaintiff, perhaps because producing it in a timely fashion would have allowed her to demonstrate the unreliability of the information contained in the database." Apart from being unfounded conjecture, this argument defies belief and reason. Plaintiff appears to be arguing that Walgreens willfully withheld information fatal to Plaintiff's case so that it instead could spend two years litigating an expensive and meritless case. Walgreens would not and did not do so, and Plaintiff's argument suggesting otherwise is false.

### c. Plaintiff Failed Even to Search For Receipts

Plaintiff's receipts for her purchases were available and accessible to her when she filed this lawsuit. "Any customer with a MyWalgreens account can log into www.Walgreens.com and view the receipts for transactions linked to that MyWalgreens account for up to two years." (Declaration of Gil Ramirez, ECF No. 86-3 at ¶11.) Plaintiff had a MyWalgreens account, knew that she had a Walgreens account,[5] and thus could have accessed these receipts until December 2023, two years after her purchases.

Plaintiff chose to receive email receipts for her Walgreens purchases. "The MyWalgreens account associated with [Plaintiff's phone number and email address] has opted in to receive receipts via email since August 8, 2021." (Declaration of Marcus Osacky, ECF No. 86-4 at ¶5.) Since Plaintiff's purchases occurred after August 8, 2021, there is no doubt that the receipts were in Plaintiff's email inbox at some point—the only question is whether she deleted them (and if so, when) or whether they are still there. Plaintiff's very carefully worded language in her Opposition reveals that, incredibly, her lawyers apparently have still not searched for the receipts. "Plaintiff's counsel have not been able to locate or identify any such receipts. . . . While Plaintiff testified that she believed she still had access to this old email account, *it is unclear whether that recollection is accurate*." (Plaintiff's Opposition, ECF No. 103 at 9 (emphasis added).) The only conclusion the reader can reach is that Plaintiff's counsel did not seek to clear up "whether that recollection is

---

[5] *See* Deposition of Plaintiff, ECF No. 86-1 at 20:24-23:7 (confirming that Plaintiff has a MyWalgreens account and uses it).

accurate." In addition, Plaintiff didn't testify that she "believed" she still had access to the account—she testified that she *did* have access to the account and that she checks it periodically: "Once a quarter, I would say." (Deposition of Plaintiff, ECF No. 86-1 at 22:12—23:7.)

Normally, the question of whether Plaintiff's counsel had asked their client for critical discovery would, at this point, be moot since the case has been dismissed. But that fact is very much relevant to this pending motion. It is revealing that Plaintiff's counsel's declaration submitted with the Opposition addresses the fact that he "worked with Plaintiff to obtain her credit card statements" but is silent on whether he did so for the receipts. (*See* Declaration of Patrick Carey, ECF No. 103-1 at ¶ 3.) It is astonishing that Plaintiff's counsel, at this point in the litigation, cannot affirmatively state one way or the other whether their client possesses the receipts, and if she does, why they were not produced. Perhaps Plaintiff's counsel do not want to find them because the very existence of those receipts in their client's inbox would confirm yet another critical discovery failure, betraying the fact that they were there all along and should have been examined before filing this case and produced in discovery.

Plaintiff cites to inapposite case law for the proposition that class representatives need not produce receipts in actions related to low-cost product purchases. In *Lilly v. Jamba Juice Company*, 308 F.R.D. 231 (N.D. Cal.2014), the Court was addressing the ascertainability of the class members without receipts. 308 F.R.D. at 237–38. It was not an issue of the class representative's standing, but of class certification standards. *See id.* "Defendants argue that the Court should reject certification here because . . . neither Plaintiffs nor Defendants have produced records demonstrating which specific individuals *(other than the named Plaintiffs)* purchased the challenged smoothie kits from the retail outlets to which Defendants distributed them." *Id.* (emphasis added). The *Lilly* Court never said that it would be unreasonable to expect a class representative to provide proof of purchase. Similarly, in *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2014 WL 1652338, (N.D. Cal. Apr. 24, 2014) the parties did not dispute that "plaintiff will be an adequate representative," and the Court only addressed the ascertainability of the class since members would likely lack of receipts. *Id.* at *2. In *Ries*, the Court declined to find that the named plaintiffs lacked standing because their purchases were undocumented by receipts,

1   but there it was undisputed that the purchases had taken place.  *Ries v. Arizona Beverages USA*

2   *LLC,* 287 F.R.D. 523, 530 (N.D. Cal. 2012).

3       But Plaintiff's citation to these cases, each of which is materially distinguishable, misses

4   the point—namely, that in this case, Plaintiff possesses (or at least possessed at the time of filing)

5   her receipts and she failed and continues to fail to produce them.  Walgreens is unaware of, nor

6   does Plaintiff cite to, any law that relieves a named plaintiff of searching for and producing

7   receipts that exist, no matter how little the product costs.

8           d.   Mr. Roodman is Irrelevant

9       Mr. Roodman is not a party to this litigation, and what he bought or thought he might have

10  bought has no bearing on the named Plaintiff's standing in this case.  It did not matter before the

11  class was certified, and it certainly has no meaning after the case has been dismissed.  Plaintiff

12  once again tries to insert Mr. Roodman as a red herring by claiming that he—a stranger to this

13  case—thinks that he might have received a bag from Walgreens but was not charged.  So, Plaintiff

14  urges, maybe Plaintiff also received a bag from Walgreens and was not charged.  This seems to be

15  an attempt to justify the failure to check for documentary proof that Plaintiff bought the bag

16  because, according to Plaintiff, another customer, based solely on recollection, claims to have

17  received a bag without paying for it.  Of course, that does not change the fact that Plaintiff did not

18  purchase a bag and that Plaintiff's counsel failed to look for any documentation of the purchases

19  before filing this case.  The only relevance Mr. Roodman has to this litigation is to show that at the

20  same time that Plaintiff's counsel were assuring this Court in their Motion and at the hearing that

21  Plaintiff bought a bag, they knew she didn't because they were trying to find someone that actually

22  did.  Mr. Roodman only hurts Plaintiff's cause here.

23      Plaintiff, again with no support or citation, claims that Walgreens "admit[ed] in public

24  filings that it violates California law."  (Plaintiff's Opposition, ECF No. 103 at 5.)  The opposite is

25  true.  Walgreens has consistently and emphatically stated that it has complied with all relevant

26  laws, including California law.  (*See, e.g.,* Walgreens' Motion to Dismiss, ECF No 21 (repeatedly

27  stating that Walgreens was at all times compliant with all relevant laws); Walgreens' Motion to

28  Dismiss 2d Amended Complaint, ECF No. 33 (same); Walgreens' Answer and Affirmative

Defenses, ECF No 56 (same); Walgreens Opposition to Motion for Class Certification, ECF No. 86 (same).)

> e.   Plaintiff Failed to Properly Respond to Walgreens' Discovery Requests.

Plaintiff claims that Walgreens' discovery requests never asked for her email address and phone number.  Walgreens served extensive discovery that, had Plaintiff properly and timely responded, would have revealed this information and other proof that Plaintiff lacked standing.

Walgreens' Interrogatory No. 2 requests the "phone numbers of persons known to Plaintiff or counsel to have knowledge concerning the facts of the case"—a description that surely includes Plaintiff.  (Exhibit A at Interrogatory No. 2.)  In response to this interrogatory, Plaintiff refused to provide any information at all. (*Id.*) Walgreens' Interrogatory No. 6 requests "every instance in which Plaintiff has purchased a shopping bag from Defendant, including . . . ***Documentary proof of the alleged purchase(s)***." (*Id.* at Interrogatory No. 6.)  Such documentation would also be responsive to Walgreens' requests for production of documents. (*See*, *e.g.,* Excerpted Pages from Plaintiff's Responses to Walgreens First Set of Requests for Production of Documents, attached hereto as Exhibit B at Request No. 2 (requesting documents relating to the subject matter of this litigation); Request No. 3 (requesting documents relating or supporting allegations in the Complaint); Request No. 11 (requesting documents relating to damages); Request No. 25 (requesting documents used in answering interrogatories).)

With these responses, Walgreens could only conclude that she paid cash and didn't have a MyWalgreens account or a receipt.  Walgreens did not learn otherwise until her deposition, which took place nearly two years after the filing of the complaint.  The reality was that she paid with a credit card, so she knew exactly the date of the transactions, and used her MyWalgreens account, so had access (and perhaps still has access) to the receipts.

Plaintiff complains that Walgreens "sought to make this case about social media postings and spent the majority of its time in discovery demanding exhaustive social media posting searches."  (Plaintiff's Opposition, ECF No. 103 at n. 3.)  It's true that Walgreens sought discovery into Plaintiff's social media.  Walgreens submitted a letter brief asking for an order requiring Plaintiff counsel to "collect Plaintiff's mobile phone, email, and social media" and to

1   search and produce relevant data and documents from those sources "consistent with the

2   Stipulated Order Regarding Discovery of Electronically Stored Information, ECF No. 59 and the

3   Federal Rules of Civil Procedure." (ECF No. 73 at 1.) Had Plaintiff's counsel actually done that

4   instead of producing a handful of screen shots that their client sent to them, Walgreens would have

5   had the phone number associated with Plaintiff's MyWalgreens account. (*See* ECF No. 73 at 2

6   ("When using screenshots, all metadata associated with the text messages are lost, such as the

7   date/time sent, the phone numbers and identities of the participants, pictures of videos sent, etc.)

8   (citations omitted)). Again, according to Plaintiff, it is Walgreens' fault that Plaintiff failed to

9   respond properly to discovery.

10          f.   <u>Sanctions Are Appropriate</u>

11       Plaintiff claims that *Safeway* is "nearly identical" to the facts here and claims that since the

12   Defendants in *Safeway* did not seek sanctions, then neither should Walgreens. There are several

13   leaps in logic in that argument, starting with the fact that *Safeway* is far from "nearly identical."

- In *Safeway*, it was undisputed and Defendant conceded that one of the named plaintiffs purchased the product in question. *Hensley-Maclean v. Safeway, Inc.*, No. 11-CV-01230-RS, 2015 WL 3956099, at *4–5. (N.D. Cal. June 29, 2015) (finding that "this is not a situation like *Lierboe* where standing, and therefore subject matter jurisdiction, was absent from the outset).

- Nor is there any evidence in *Safeway* that Defendants provided proof to Plaintiff that she lacked standing ahead of filing their motion to certify the class.

- Nor is there any evidence in *Safeway* that Plaintiff' counsel tried to convince the Court that their client had standing while concurrently looking for another putative plaintiff that did.

- Finally, even if all those facts were identical (they are not), just because the Defendants in *Safeway* did not seek sanctions does not mean that it would be inappropriate for Walgreens to do so here.

25       Plaintiff complains that Walgreens "does not cite a single analogous case showing that

26   sanctions are warranted." (Plaintiff's Opposition, ECF No. 103 at 15.) Plaintiff is right.

27   Walgreens tried but could not find a case where a Plaintiff who never purchased a particular

28   product sought to represent a class of purchasers of that product, filed a class action lawsuit

without checking for receipts, and, upon receiving proof that Plaintiff did not purchase the product and thus lacked standing, nevertheless filed a Motion for Class Certification, and at the same time tried to drum up a potential plaintiff who actually purchased the product.  That only serves to underscore the extraordinary nature of Plaintiff's actions which warrant the "extraordinary remedy" of Rule 11 sanctions.

Plaintiff's counsel seek shelter in SB270 which requires stores to charge for the bags. Plaintiff's counsel attempts to justify their failure to search for documentation of purchase because they assumed that she bought the bag that she apparently possessed.  Plaintiff quotes *Salkil*: "A mistake can hardly be characterized as unreasonable . . . when the mistake is made by all parties to the litigation." *Salkil v. Mount Sterling Township Police Dept*. 458 F.3d 520, 530 (6th Cir. 2006). But Walgreens did not share this mistake, and SB270 does not relieve Plaintiff from her discovery obligations.  Walgreens specifically requested documentation proving the purchase.  (*See, e.g.,* Walgreens Interrogatory No. 6, ECF No. 93-1 at 5–6 (requesting "Documentary proof of the alleged purchase(s)").)  Plaintiff's vague responses and failure to search for and provide critical documentation in her possession does not shift blame to Walgreens.  Walgreens can't fairly be deemed to share in a mistake when it specifically requested discovery that would've brought Plaintiff's mistake to light.

### g.   Evidence of Attorneys' Fees

Plaintiff seems to suggest that Walgreens' motion for sanctions must fail because Walgreens did not file an accounting of attorneys' fees.  Walgreens agrees that if it prevails on its motion and is awarded fees, Walgreens would submit detailed affidavits with itemized computation of the time and charges and the Court should assess the reasonableness of those fees. It is not appropriate for Walgreens do so now because attorneys' fees are still accruing in bringing and arguing this motion, and Walgreens has asked for primary and alternative relief. *See, e.g.*, *Edgerly v. City & Cnty. of San Francisco*, No. C 03-02169 WHA, 2005 WL 235710, at *3 (N.D. Cal. Feb. 1, 2005) (awarding sanctions to defendant and allowing defendant to file a declaration "describing the amount of attorney's fees and costs incurred in responding to plaintiff's motions … and filing [defendant's] motions for sanctions.").  The cases that Plaintiff cite only reinforce the

uncontroverted proposition that courts are required to carefully consider the reasonableness of fees, but those cases do not require a party seeking sanctions for attorneys' fees to quantify those fees within its motion in chief.  For example, In *Matter of Yagman*, the Ninth Circuit found that the trial court failed adequately to review the attorneys' fees that it awarded but did not find that the Defendant's sanction motion failed because Defendant failed to provide a detailed accounting of its fees in its motion in chief.  796 F.2d 1165, 1184 (9th Cir. 1986).

**III.    CONCLUSION**

Walgreens requests the Court issue an order sanctioning Plaintiff and awarding Walgreens its reasonable attorneys' fees in defending this lawsuit.  In the alternative, and at minimum, Walgreens requests its reasonable attorneys' fees responding to Plaintiff's Motion for Class Certification and filing this instant motion for sanctions.

Dated: July 1, 2024

NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: /s/ Cory E. Manning
Cory E. Manning (State Bar No. 213120)
cory.manning@nelsonmullins.com
Jarrett O. Coco (admitted *Pro Hac Vice*)
jarrett.coco@nelsonmullins.com
1320 Main St., 17th Floor
Columbia, SC 29201
Telephone: 803.255.5524
Facsimile: 803.256.7500

Miles E. Coleman (admitted *Pro Hac Vice*)
miles.coleman@nelsonmullins.com
2 W. Washington St., 4th Floor
Greenville, SC 29601
Telephone:  864.373.2352
Facsimile: 864.373.2925

*Attorneys for Defendant Walgreen Co.*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 1st day of July 2024 a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANT WALGREEN CO.'s MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** was served on all counsel of record listed below who are participants in the CM/ECF system.

Mary-Haley Ousley
Patrick Carey
Lexington Law Group
503 Divisadero St.
San Francisco, CA 94117
mhousley@lexlawgroup.com
pcarey@lexlawgroup.com

Gideon Kracov
Law Ofc Gideon Kracov
801 S Grand Ave 11 Fl
Los Angeles, CA 90017
gk@gideonlaw.net

*/s/ Cory E. Manning*
Cory E. Manning (State Bar No. 213120)
cory.manning@nelsonmullins.com
Jarrett O. Coco (admitted *Pro Hac Vice*)
jarrett.coco@nelsonmullins.com
1320 Main St., 17th Floor
Columbia, SC 29201
Telephone: 803.255.5524
Facsimile: 803.256.7500

Miles E. Coleman (admitted *Pro Hac Vice*)
miles.coleman@nelsonmullins.com
2 W. Washington St., 4th Floor
Greenville, SC 29601
Telephone:  864.373.2352
Facsimile: 864.373.2925

*Attorneys for Defendant Walgreen Co.*